CARSON F. CALLOWAY v. SHUFORD MILLS AND AMERICAN MUTUAL IN-
SURANCE COMPANY

No. 8510IC432

(Filed 21 January 1986)

1. **Master and Servant § 68— occupational exposure to cotton dust—significant aggravation of chronic obstructive pulmonary disease—evidence sufficient**

   The evidence was sufficient to support the Industrial Commission's find-
   ing and conclusion that plaintiff's exposure to respirable cotton dust while
   employed with defendant significantly aggravated the severity of his chronic
   obstructive pulmonary disease where the only medical expert to testify in the
   case identified as causative factors smoking, which he discounted as a minor
   factor, exposure to cotton dust, and hyper-reactive airways disease; testified
   that plaintiff's exposure was probably one cause of his chronic obstructive
   pulmonary disease; and testified that the greater part of plaintiff's present
   obstruction was either caused by or aggravated by his occupational exposure.
   N.C.G.S. 97-53(13) (1985).

2. **Master and Servant § 68— chronic pulmonary disease—partial disability—sub-sequent employment at higher wage**

   The Industrial Commission did not err by concluding that a chronic
   pulmonary disease caused plaintiff to be permanently partially disabled,
   despite evidence that he worked in the packing room at a wage higher than he
   had ever before earned after his lung disease was diagnosed, because the Com-
   mission found without exception that plaintiff performed unsatisfactorily at
   that job because of his lack of concentration. N.C.G.S. 97-2(9) (1985).

3. **Master and Servant § 69— chronic pulmonary disease—credit for wages earned after disability—remanded for further findings**

   An Industrial Commission award of compensation was remanded for fur-
   ther findings on the issue of wages earned after plaintiff was found to be
   disabled where the Commission gave defendant a credit for "any wages earned
   by plaintiff" as a night watchman for defendant after he was given a medical
   leave of absence for his chronic obstructive pulmonary disease. N.C.G.S. 97-30,
   N.C.G.S. 97-47.

APPEAL by defendants from an opinion and award of the
North Carolina Industrial Commission entered 16 November 1984.
Heard in the Court of Appeals 29 October 1985.

*Charles R. Hassell, Jr., for plaintiff appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, by Hatcher Kinche-
loe, Gregory C. York, and Martha W. Surles, for defendant appel-
lants.*

BECTON, Judge.

I

Plaintiff, Carson Calloway, filed a claim under North Carolina's Workers' Compensation Act, seeking benefits for disability resulting from an occupational disease. A Deputy Commissioner concluded that Calloway was permanently partially disabled as a result of his chronic obstructive lung disease and awarded three hundred weeks of benefits plus medical expenses and costs. The Commission then modified this opinion and award to allow a credit for wages earned by Calloway since he was determined to be disabled. Defendants Shuford Mills and American Mutual Insurance Company appeal, contending the Commission erred in finding and concluding that: (1) Calloway had an occupational disease; (2) Calloway was permanently partially disabled; and (3) defendants were entitled to a credit only for wages earned by Calloway after he was found to be disabled. Although we find no error on the first two issues, we remand for further findings on the issue of defendants' entitlement to credit.

II

Carson Calloway was born on 28 April 1922 and attended school through the third grade. He worked in cotton textile mills for approximately thirty-four years between 1940 and 1982. During his employment, much of which was spent in the card room, he was exposed to respirable cotton dust. Calloway testified that he began smoking when he was ten or twelve years old and smoked "at most" one or one and one-half cartons per week. He quit smoking in 1948 because he was experiencing a cough in the mornings. He first noticed respiratory problems in the early 1960's, when he experienced shortness of breath. Initially, his symptoms were worse during the early part of the working week and seemed to improve on weekends. By 1978 to 1980, when he was working in the card room at Sure Spun (a Shuford Mills plant), symptoms troubled him throughout the week.

In 1980, after performing poorly on a company-administered breathing test, Calloway was sent to see two pulmonary specialists, Dr. Hart and Dr. Owens, the latter of whom was the only medical expert to testify in this case. Dr. Owens gave Calloway a physical examination and had pulmonary function tests per-

formed. Dr. Owens concluded that Calloway had chronic obstructive pulmonary disease with chronic bronchitis and a 25% to 35% impairment of lung function, and he recommended that Calloway be placed in a working environment where he would not be exposed to cotton dust or other respirable irritants. In accordance with this recommendation, Calloway began to work in the packing room at Spun Set (another Shuford Mills plant). He was moved from that job to the synthetic card room in March of 1982, but the fumes from polyester processing irritated his breathing to the extent that on 7 March 1982, he was given a medical leave of absence. Subsequently, he was laid off, but he resumed working part time at Sure Spun in July 1982 as a night watchman.

III

[1] The defendants first argue that the Commission erred in finding that claimant had an occupational disease. Under N.C. Gen. Stat. Sec. 97-53(13) (1985), an occupational disease is "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." In order for chronic obstructive lung disease to be an occupational disease, it is necessary to prove that

the occupation in question exposed the worker to a greater risk of contracting this disease than members of the public generally, and provided the worker's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or are significant causal factors.

*Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 101, 301 S.E. 2d 359, 369-70 (1983); *compare with Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E. 2d 101, 106 (1981) (former standard of causation).

The Commission found that Calloway has chronic obstructive pulmonary disease. It also found that:

20. Plaintiff's exposure to respirable cotton dust while employed with the defendant/employer was injurious to plaintiff and caused further injury to him by significantly ag-

gravating the severity of his chronic obstructive pulmonary disease.

\*   \*   \*

23. There is no mechanism which can separate quantitatively how much of plaintiff's chronic obstructive pulmonary disease was caused by his exposure to cotton dust versus his exposure to cigarette smoking versus his underlying susceptibility.

24. As a result of chronic obstructive pulmonary disease which was caused by and significantly aggravated by plaintiff's exposure to cotton dust in his employment with defendant/employer, plaintiff is only able to perform sedentary or light work in a clean air environment.

25. As of March 8, 1982, plaintiff was and remains permanently partially disabled as a result of chronic obstructive pulmonary disease that was due to, aggravated, augmented and accelerated by, causes and conditions peculiar to plaintiff's employment i.e. exposure to respirable cotton dust in an "at risk" area of the mill.

Defendants assert that these findings are deficient in that they "failed to address the primary question of the actual cause of the claimant's chronic obstructive lung disease." Defendants misunderstand the currently applicable standard in this area. *Rutledge* expressly replaced the former standard of actual causation with a liberalized standard of causation whereby exposure to cotton dust need only be a significant causative or contributing factor in the disease's development.

Dr. Owens identified three causative factors of Calloway's chronic obstructive lung disease: (1) smoking (which he expressly discounted as a "minor factor" in the disease's development), (2) exposure to cotton dust, and (3) hyper-reactive airways disease, which is characterized by an abnormal amount of "reactivity"—inflammation, smothering and bronchospasms—upon exposure to airways irritants. Dr. Owens testified that Calloway's exposure was probably one cause of his chronic obstructive pulmonary disease. He also testified:

I would think that the greater part of his present obstruction is either caused by or aggravated by his occupational exposure.

This evidence is, in our estimation, sufficient to support the Commission's finding and conclusion to the effect that Calloway's "exposure to respirable cotton dust while employed with the defendant employer . . . significantly [aggravated] the severity of his chronic obstructive pulmonary disease." Our Supreme Court recently deemed even more equivocal medical testimony sufficient to support a finding of significant contribution. *See Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 570-71, 336 S.E. 2d 47, 49-50 (1985) (A physician testified: "[S]he probably has obstructive impairment caused by cotton dust exposure," and "I feel that there is an element of pulmonary impairment present which could have been contributed to by her cotton dust exposure.").

Furthermore, we find the Commission's use of the language "significantly aggravating" sufficient under *Rutledge*. *See Gibson v. Little Cotton Mfg. Co.*, 73 N.C. App. 143, 325 S.E. 2d 698 (1985) (A finding that both claimant's "smoking history and his exposure to cotton dust were significant etiologic factors in the development of his lung disease" satisfies *Rutledge*.); *cf. Adkins v. Fieldcrest Mills, Inc.*, 71 N.C. App. 621, 322 S.E. 2d 642 (1984) (a finding that claimant's lung disease was caused by smoking "and contributed to and aggravated by his cotton dust exposure" required remand under *Rutledge*). We note that the opinion and award of the Deputy Commissioner in the case at bar, and that of the Commission, were rendered subsequent to the filing of *Rutledge*.

IV

[2] Defendants next argue the Commission erred in finding and concluding that Calloway's pulmonary impairment caused him to be permanently partially disabled. "Disability" is the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. Sec. 97-2(9) (1985); *see Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E. 2d 682, 683 (1982) (identifying requisite findings to support conclusion of disability). A claimant able to work and earn some wages, but less than he or she was receiving at the time of injury, is partially disabled. *See*

*Little v. Anson County Schools Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). The burden of showing the existence and degree of disability is on the claimant. *Hilliard.* Disability is a legal conclusion, *id.*, and, as such, will be binding on the reviewing court if supported by proper findings. *See Priddy v. Cone Mills Corp.*, 58 N.C. App. 720, 294 S.E. 2d 743 (1982).

Defendants argue that Calloway has not suffered a diminution in his wage-earning capacity as a result of an occupational disease because the evidence conclusively showed he had worked in the packing room at $5.51 per hour, a wage higher than he had ever before earned, *after* his impairing lung disease was diagnosed. We disagree. The Commission found without exception that Calloway performed unsatisfactorily at this job in the packing department because of "his lack of concentration on the details that the job required." Calloway had only a third grade education. These and other findings, as well as the evidence, demonstrate that although he was capable of performing less skilled jobs at the mill, which he did for more than thirty years, he had difficulty in a position requiring greater skills. Individual, intellectual and vocational considerations may be taken into account on the issue of disability. *See Hundley v. Fieldcrest Mills, Inc.*, 58 N.C. App. 184, 292 S.E. 2d 766 (1982) (relying on *Little*). Thus, it was not error for the Commission to conclude that Calloway was permanently partially disabled.

V

[3]  The defendants' final argument is that the Commission erred in allowing defendants a credit only for the wages actually earned by Calloway after he was found to be disabled. Calloway testified that he was rehired by defendant Shuford Mills as a night watchman in July 1982, working an average of eighteen hours per week at $4.96 per hour. Although the Deputy Commissioner found that Calloway had not worked since 7 March 1982 and therefore did not allow defendants any credit for wages earned by Calloway subsequent to that date, the Commission made the following modification in its opinion and award:

> [W]e note that the evidence is unclear concerning plaintiff's work history following the date he was determined to be permanently partially disabled. Under G.S. 97-30, the plaintiff is entitled to compensation at the rate of 66⅔'s percent, the dif-

ference between his average weekly wage prior to disability and his average weekly wage immediately thereafter. The compensation allowed by Deputy Commissioner Bryant assumes plaintiff has earned no income since March 7, 1982. The record is unclear on this point. Defendants are entitled to a credit for any wages earned by plaintiff since that time.

The Commission granted defendants a credit "for any wages earned by plaintiff in the 300 weeks since March 8, 1982."

Defendants argue that the Commission improperly based its award of credit upon Calloway's actual future earnings rather than his wage-earning capacity. Defendants rely on N.C. Gen. Stat. Sec. 97-30 (1985) which sets compensation for partial incapacity at two-thirds of the difference between a claimant's "average weekly wages before the injury and the average weekly wages which he is *able to earn* thereafter . . ." for a maximum of three hundred weeks. (Emphasis added.) The defendants reason that the Commission's order will allow them a credit only if Calloway continues to work and will allow Calloway to select future employment without regard to his actual wage-earning capabilities. In our opinion, however, implicit in the Commission's finding that Calloway is entitled to compensation at two-thirds the difference between his wages prior to disability and "his average weekly wages immediately thereafter" is a finding that the wages actually earned by Calloway after 7 March 1982 were the wages he was capable of earning. In this connection, we note it was defendant Shuford Mills who rehired Calloway as a night watchman; presumably, they placed him in a job commensurate with his wage-earning capabilities. Furthermore, if at some future point defendants feel Calloway is no longer earning the wages he is capable of earning, the modification provisions of N.C. Gen. Stat. Sec. 97-47 (1985) are available to them. *See Edwards v. Smith & Sons*, 49 N.C. App. 191, 270 S.E. 2d 569 (1980), *disc. rev. denied*, 301 N.C. 720, 274 S.E. 2d 228 (1981) ("Change of condition" can refer to an injured employee's physical capacity to earn.).

Calloway concedes, however, in both his brief and during oral argument, that his case should be remanded for more specific findings under G.S. Sec. 97-30. We agree that a remand is necessary for further findings on the issue of the wages earned by Calloway since 7 March 1982, so that the exact amount of credit

may be set and compensation properly calculated.[1] On remand, the Commission may reopen the proceedings to take additional evidence if it determines on the record that there is insufficient evidence to make further findings necessary to determine the proper amount of credit.

Affirmed in part; vacated in part; and remanded.

Judges WEBB and COZORT concur.

---

1. Although defendants excepted to the Commission's findings as to Calloway's average weekly wage *prior* to his injury, they did not discuss that point in their brief, and that finding therefore is binding upon us. *See* N.C. Rules App. Proc., Rule 28(a).