KARYN WINDERS, Employee, Plaintiff-Appellee v. EDGECOMBE COUNTY HOME HEALTH CARE, Employer, and SEDGWICK CLAIMS MANAGEMENT SERVICES, Carrier, Defendants-Appellants

No. COA07-489

(Filed 18 December 2007)

**1. Workers' Compensation— back injury—pool therapy**

There was competent evidence in the record in a workers' compensation case involving a back injury to support the Industrial Commission's finding that pool therapy is a compensable medical treatment or service.

**2. Workers' Compensation— back injury—pool therapy—frequency**

Industrial Commission findings in a workers' compensation case that plaintiff needs pool therapy five days a week for a back injury were not supported by the evidence.

**3. Workers' Compensation— back injury—pool therapy—cost of home pool**

The Industrial Commission erred by mandating that a back-injury plaintiff receive the daily cost of a home pool on the days she could not use the YMCA or a similar facility for valid reasons.

Appeal by defendants from opinion and award of the Full Commission of the North Carolina Industrial Commission entered 5 February 2007 by Commissioner Bernadine S. Ballance. Heard in the Court of Appeals 1 November 2007.

*Edwards and Ricci, P.A., by Roberta L. Edwards and Jonathan H. Winstead, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Robert C. Kerner, Jr., for defendants-appellants.*

JACKSON, Judge.

Edgecombe County Home Health Care and Sedgwick Claims Management Services ("defendants") appeal the 5 February 2007 opinion and award of the Full Commission of the North Carolina Industrial Commission in favor of Karyn Winders ("plaintiff"). For the reasons stated below, we reverse.

Plaintiff was working as a home health care nurse on 29 June 1998 when she injured her back attempting to catch her three hundred pound patient who was falling off a bed. The following day, plaintiff was treated by her family physician, Dr. Michael Sunderman ("Dr. Sunderman"). He recommended physical therapy. Plaintiff called Dr. Sunderman on 15 July 1998 complaining of numbness and tingling in both legs, and stated that physical therapy was not helping. He referred her to Dr. John Gorecki ("Dr. Gorecki") of Duke University Medical Center.

On 14 August 1998, plaintiff saw Dr. Gorecki for severe back pain and numbness in her lower extremities. On 7 October 1998, she underwent surgery that resulted in a two-level fusion at L4-5 and L5-S1, with BAK cages and a bone graft. Plaintiff continued to experience severe pain, ultimately having a spinal column stimulator installed in October 2000. Several surgeries followed the implantation of the dorsal spinal column stimulator: (1) the pulse generator was replaced on 27 August 2001; (2) the pulse generator and extension wire were removed and a new radio frequency receiver with extension wires was implanted on 5 February 2004; and (3) the stimulator was removed on 28 November 2005 and replaced with a rechargeable one.

By 12 January 1999, plaintiff was taking OxyCodone for her pain. She reported better pain control due to the medication. At her visit on 18 March 1999, Dr. Gorecki recommended pool therapy as part of an overall physical therapy program and a gradual decrease of the previously prescribed OxyCodone dosage.

Plaintiff was referred to the YMCA for pool therapy at a 30 March 1999 outpatient physical therapy evaluation at Nash General Hospital. As of 2 August 1999, plaintiff was enrolled in an aquatic exercise class at the YMCA. She attended sessions three days each week for an hour per day. Dr. Gorecki originally prescribed pool therapy for three months. Defendants stopped paying for the pool therapy after three months, at which time plaintiff and her husband began paying for the classes.

On 7 October 1999, plaintiff again saw Dr. Gorecki and complained of modest, dull, aching back pain which worsened with activity. He imposed physical restrictions such as no lifting over ten pounds, and alternating between walking, sitting, and standing. At her 8 February 2000 follow-up visit, plaintiff asked Dr. Gorecki about con-

tinuing aquatic therapy. He told her that such therapy was appropriate and that it "would always be useful for her."

Plaintiff's father built an in-ground, heated, enclosed pool[1] at his home in October 2000—about the time plaintiff's spinal stimulator was installed. Thereafter, plaintiff traveled to her parents' home three to five times per week to use the pool for her therapy. She continued the same exercise regimen she learned at the YMCA.

In June 2003, plaintiff and her husband purchased her parents' home. Since then, plaintiff has tried to use the pool on a daily basis. During the time she is in the pool, she is relatively pain-free. Her relief continues for about fifteen minutes after she leaves the pool. Over the next few hours, the pain gradually increases to its normal level. She gets more significant benefits from the home pool as opposed to the YMCA aquatic therapy because the pool's temperature at the YMCA caused her to have back spasms. She maintains a warmer than normal temperature in the home pool because she gets better pain relief when exercising in warm water.

Throughout her treatment, plaintiff continued to see Dr. Sunderman for medication management. On 26 October 2004, she asked Dr. Sunderman to prescribe home pool therapy, including "cleaning, maintenance, and supplies." Dr. Sunderman prescribed the therapy as requested because he concurred with the request.

Plaintiff continued to experience back pain. On 12 August 2005, she was seen by a physician's assistant at Triangle Spine and Back Care Center. She stated that her pain had intensified over the previous years and had not been relieved with the multiple treatments she had tried. She did not want to try any non-surgical treatments. She was referred for a discogram to evaluate if surgery was an option.

A discogram was performed on 22 September 2005 and showed that the BAK cages were in place and the fusion was solid. There was no anatomic reason to explain the nature and extent of plaintiff's pain. Her muscle strength was normal. These results were explained to plaintiff at a 13 October 2005 follow-up visit with Dr. William F. Lestini ("Dr. Lestini") of Triangle Spine and Back Care Center.

Plaintiff filed a claim with the Industrial Commission on 27 October 2005, seeking reimbursement for heating her home pool, as well as authorization for further examinations to determine if surgery

1. The pool varies from three to five and one-half feet deep and is surrounded by several feet of concrete decking with several chairs placed around it.

was possible. A hearing was held on 3 January 2006 before a Deputy Commissioner. The opinion and award dated 17 May 2006 denied plaintiff's claim for pool maintenance and request for evaluation by one of two doctors. Plaintiff appealed to the Full Commission.

The case was reviewed by the Full Commission on 16 November 2006. On 5 February 2007, the Full Commission entered its opinion and award granting plaintiff pool therapy a minimum of five times per week, including transportation, if necessary. Defendants were ordered to reimburse plaintiff $6.85 for each day that plaintiff could not attend pool therapy away from home in order to maintain her home pool. Defendants appeal.

[1] Defendants first argue that the Full Commission erred in finding that plaintiff was entitled to pool therapy for a minimum of five days per week. We agree.

"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (citing *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)).

> Although it is well-established that the Industrial Commission is the sole judge of the credibility of the witnesses and the evidentiary weight to be given their testimony, findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them.

*Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (internal citations omitted). The Commission's conclusions of law are reviewed *de novo. Griggs v. Eastern Omni Constructors*, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).

Defendants contend that there was no competent evidence that pool therapy was warranted in that plaintiff's pain relief was too minimal to meet the statutory definition of "medical compensation." We disagree.

The North Carolina Workers' Compensation Act requires employers to provide medical compensation to workers "who suffer disability by accident arising out of and in the course of their employment." *Henry v. Leather Co.*, 234 N.C. 126, 127, 66 S.E.2d 693, 694 (1951); *see* N.C. Gen. Stat. § 97-25 (2005). "Medical compensation" is defined as

medical, . . . and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to . . . give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability[.]

N.C. Gen. Stat. § 97-2(19) (2005).

The Industrial Commission found as fact that pool therapy is a medical treatment or service "which is reasonably required to either provide relief, effect a cure, and/or lessen Plaintiff's disability[.]" This finding of fact is supported by the deposition testimony of Drs. Sunderman and Lestini.

Dr. Sunderman testified that he sometimes prescribes such therapy when patients are significantly restricted in activity due to pain; it is a way to keep them moving. It keeps them flexible and toned. He testified that the therapy is intended to provide relief for plaintiff's back pain symptoms, that it gives her some relief, and that it maintains her tone and hopefully keeps her more physically capable. Dr. Sunderman prescribed pool therapy, albeit at plaintiff's request, because in her situation, it "ma[de] sense." He stated that part of her ongoing prescription was continued pool therapy.

Dr. Lestini testified that he sometimes recommended pool therapy for his patients as a way to get them mobilized. It is often used for people who are very deconditioned and probably would not tolerate a land-based exercise program. Although he had not reviewed plaintiff's pain management plan, he thought that if she was unable to tolerate physical therapy, pool therapy would be a reasonable backup.

Further, "relief from pain is a legitimate aspect of the 'relief' anticipated by future medical treatment under N.C. Gen. Stat. § 97-25[.]" *Simon v. Triangle Materials, Inc.*, 106 N.C. App. 39, 44, 415 S.E.2d 105, 108, *disc. rev. denied*, 332 N.C. 347, 421 S.E.2d 154 (1992). Plaintiff testified that she was relatively pain-free while in the pool and remained so for a short period after getting out of the pool. She continued that her pain gradually increased over a period of a few hours to its normal level. Dr. Sunderman testified that plaintiff experienced brief but significant pain relief with pool therapy—that it was one of the few things that provided a source of improvement and pain relief for her. Dr. Sunderman further testified that there were benefits to even brief periods of pain relief. He stated that for a patient who has chronic pain, even brief periods of pain relief were psychologically beneficial.

Based upon the expert testimony and relevant case law, we hold that there is competent evidence in the record to support the Industrial Commission's finding of fact that pool therapy is a compensable medical treatment or service. This finding of fact in turn supports the Full Commission's conclusion that plaintiff is entitled to pool therapy.

[2] Defendants next contend that there is no competent evidence from medical authorities supporting the award of "a minimum" of five days per week of pool therapy. We agree.

The Full Commission concluded that defendants are obligated to provide pool therapy for a minimum of five days per week. The following findings of fact relate to the number of plaintiff's pool therapy sessions, and state in pertinent part:

10. Over a three-month period, Plaintiff attended sessions at the YMCA three days a week for an hour per day.

. . . .

14. [O]n February 8, 2000, . . . Dr. Gorecki's medical note indicates aquatic therapy is appropriate and "would always be useful for her."

15. [Plaintiff] testified she would travel to her parents' home between three and five times a week to use the pool.

. . . .

20. In June 2003, Plaintiff and her husband bought her parents' home. Since that time she has tried to use the pool on a daily basis.

As to finding of fact number 14, there is no medical note dated 8 February 2000 in the record before this Court to support it. Finding of fact number 15 is a recitation of plaintiff's testimony. "[R]ecitations of the testimony of each witness *do not* constitute *findings* of fact by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." *In re Green*, 67 N.C. App. 501, 505 n. 1, 313 S.E.2d 193, 195 (1984) (emphasis in original). Therefore, these two findings of fact are not supported by competent evidence in the record and are not binding upon this Court. This leaves only two relevant findings of fact. Both show the number of

pool therapy sessions it was plaintiff's habit to engage in, but not the number of sessions a doctor ordered as reasonably necessary to alleviate plaintiff's pain.

The Full Commission made no findings of fact that a doctor had prescribed a minimum of five pool therapy sessions per week. The record evidence does not support such a finding of fact. Dr. Sunderman agreed in his deposition that plaintiff continues to need pool therapy on a daily basis, but his prescription, written at plaintiff's request, did not specify a number of therapy sessions per week. Although the Full Commission's findings of fact indicate that Dr. Gorecki ordered pool therapy on 3 August 1999, the medical note for that date in the record before this Court does not address pool therapy. After Dr. Gorecki allegedly prescribed pool therapy in August 1999, plaintiff received such therapy only three times each week. As the Commission's findings of fact are not supported by competent evidence that plaintiff required pool therapy for a minimum of five days per week, they cannot support its conclusion of law mandating that result.

[3] Finally, defendants argue that the maintenance costs of a home pool on days that plaintiff has "valid reasons" for not going to outside pool therapy are not "medical compensation." We agree.

The Full Commission first concluded that plaintiff had failed to prove by the greater weight of the evidence that she is entitled to medical compensation for the gas, electricity, and supplies used to heat and maintain her home pool. Several findings of fact are relevant to this conclusion of law. Such findings include, in pertinent part:

9. As of August 2, 1999, Plaintiff was enrolled in an aquatic exercise class at the YMCA.

. . . .

11. Plaintiff testified that after the first three months of aqua therapy at the YMCA, Defendant-carrier stopped paying for the classes. Plaintiff and her husband then began to pay for the aqua therapy classes.

. . . .

13. Dr. Gorecki's notes do not indicate that Plaintiff should receive water therapy from a pool heated to a certain temperature.

. . . .

17. [Plaintiff] performs in [her home] pool the same regimen she learned during aqua therapy at the YMCA.

. . . .

30. Although being able to perform pool therapy at home in a heated pool is beneficial to Plaintiff, there is insufficient evidence from which to find that pool or aqua therapy at the YMCA is not also beneficial.

Although there may be some evidence in the record to support contrary findings of fact, "it has long been settled that in a Work[ers'] Compensation case the findings of fact by the Industrial Commission . . . are conclusive on appeal when supported by competent evidence, even though there is evidence that would have supported findings to the contrary." *Hollman v. City of Raleigh*, 273 N.C. 240, 245, 159 S.E.2d 874, 877 (1968). Based upon the evidence before this Court, we hold that there is sufficient competent evidence to support these findings of fact.

Here, after concluding that plaintiff had failed to prove that she was entitled to medical compensation for pool maintenance and denying plaintiff medical compensation for pool maintenance, the Full Commission made an exception "for the limited purposes authorized herein." The specific exception was that "Defendants shall . . . reimburse Plaintiff at the rate of six dollars and eighty-five cents per day for any day within the authorized weekly period that Plaintiff is required to use her home pool for therapy for valid reasons given."

The Full Commission found as fact:

28. A twenty-five thousand BTU heater is hooked up to the [pool's] filtration system. Electricity to run the pump costs about thirty-five dollars a month. The pool also requires between nine hundred to a thousand gallons of gas a year. The average annual cost of gas for the pool is eighteen hundred twenty-five dollars. The maximum cost of chemicals is two hundred fifty dollars a year. So the total. cost of heating and maintaining the pool is approximately two thousand five hundred dollars a year, which amounts to approximately six dollars and eighty-five cents per day.

Although this finding of fact is supported by competent evidence in the record, it supports only partially the conclusion of law that "Defendants shall reimburse Plaintiff at the rate of six dollars and

eighty-five cents per day for any day within the authorized weekly period that Plaintiff is required to use her at home pool for valid reasons given." This conclusion of law is inconsistent with the conclusion of law that plaintiff had failed to prove she is entitled to medical compensation for the maintenance of her personal pool. Further, the Full Commission failed to give any guidance as to what "valid reasons" would support plaintiff's use of her home pool instead of the YMCA or similar facility.

Because we hold that the Full Commission erred in awarding plaintiff a greater number of pool therapy sessions per week than that supported by the evidence, and in awarding maintenance costs on days plaintiff has "valid reasons" to use her home pool, we reverse.

Reversed.

Judges TYSON and STROUD concur.