* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission modifies in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ORDER
The defendants moved to dismiss the plaintiff's appeal to the Full Commission, on the ground that the plaintiff did not state his assignments of error with particularity. The plaintiff assigned error to the entire decision of the Deputy Commissioner. The Full Commission finds and concludes that since the issues and the award are not complicated, in terms of understanding *Page 2 
what the plaintiff is seeking, the defendants are not prejudiced by the plaintiff's failure to state his reasons for appeal with more particularity.
 * * * * * * * * * * * ISSUES
The following issues were before the Full Commission for determination:
1. Whether the medications that the plaintiff took related to his compensable injury caused the plaintiff's diabetes?
2. Whether the defendants should be held responsible for providing the plaintiff with art therapy?
3. Whether the defendants should be held responsible for certain medical expenses, as alleged by the plaintiff?
 * * * * * * * * * * *
Based upon all of the competent evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. All parties are properly before the North Carolina Industrial Commission.
2. All parties are correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the date of the plaintiff's work injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the plaintiff and the defendant-employer.
4. The plaintiff was born on December 7, 1945.
 5. The defendant-employer first employed the plaintiff in 1985. *Page 3 
6. On February 22, 1986, the plaintiff experienced an electrical shock injury while working at Texas Gulf for the defendant-employer.
7. In a prior Opinion and Award, the plaintiff received lifetime medical benefits for his heart condition, hyperthyroid condition, and depression, all resulting from the electrical shock injury. In a subsequent Opinion and Award, the North Carolina Industrial Commission found the plaintiff's organic brain dysfunction to be related to his electrical shock injury.
8. In an Opinion and Award dated March 19, 2007, the Full Commission ordered that the defendants pay for all of the plaintiff's medical expenses incurred or to be incurred as a result of the plaintiff's compensable injury by accident on February 22, 1986, including psychiatric treatment, for so long as such evaluations, examinations, and treatments may be reasonably required to effect a cure or give relief, and will tend to lessen the period of the plaintiff's disability. The Full Commission entered this Opinion and Award after considering responses to written medical questions submitted by Dr. Kalavathi Kolappa, physician's assistant Ms. Susan Evers, Dr. Celeste Good, Dr. Robert Turner, licensed professional counselor and board-certified art therapist Beverly Sheaffer, and the written independent psychological evaluation report of Dr. Verne Schmickley. The Full Commission also authorized Dr. Judith Yongue as the plaintiff's treating psychiatrist. The Full Commission ordered the defendants to contact Dr. Yongue's office within five (5) days of receipt of the Order to set an evaluation, examination, and/or treatment appointment for the plaintiff to determine a course of treatment. The Full Commission left for determination, after an evidentiary hearing, the issue of whether the plaintiff's medications prescribed for his compensable injury caused his diabetes. The Full Commission Order further indicated that the plaintiff abandoned his request for art therapy. It *Page 4 
became clear at the subsequent evidentiary hearing before Deputy Commissioner Deluca, however, that the plaintiff continued to prosecute the art therapy issue.
9. The plaintiff contends that his medical treatment for diabetes is causally related to his compensable injury because the Zyprexa and Risperdal he took to treat his compensable psychological conditions caused him to develop diabetes mellitus.
10. Dr. Celeste Good prescribed Zyprexa for the plaintiff on March 5, 2001, and he continuously took this drug at 10 to 15 milligrams per day until January 28, 2004. The plaintiff began Risperdal therapy on September 13, 1996. The plaintiff's initial diagnosis of adult onset diabetes mellitus was July 6, 2001.
11. The plaintiff's evidence in support of a causal link between his diabetes and the Zyprexa and Risperdal he took is a "Dear Doctor" letter from Eli Lilly Company, dated March 1, 2004. The letter informed doctors of the required warning statement on Zyprexa and certain other anti-psychotic drugs (including Risperdal), describing the increased risk of hyperglycemia and diabetes in patients taking these medications. The plaintiff's medical expert, however, could only testify to a possible link between Zyprexa and his diabetes.
12. Dr. Robert C. Turner, an expert in internal medicine, treated the plaintiff for more than 10 years. He is of the opinion that the plaintiff suffered multiple problems due to his electrical shock injury, including paroxysmal atrial fibrillation, post-traumatic stress disorder, depression, and hypothyroidism. He testified that there is a possible link between Zyprexa and diabetes, but he was of the opinion that the plaintiff was going to develop diabetes whether he took Zyprexa or not. The plaintiff has a strong family history for development of diabetes. The plaintiff's mother, father, and brother all had diabetes. Dr.Turner also opined that it is possible that the plaintiff developed diabetes sooner as a result of taking Zyprexa, but there is no way of *Page 5 
knowing. Dr. Good found the plaintiff's diabetes to be possibly related to Zyprexa. The plaintiff did not prove, by the greater weight of the evidence, that his diabetes is causally related to taking the prescribed Zyprexa or Risperdal.
13. The plaintiff is also seeking medical compensation for what he describes as "art therapy," as a means of lessening his psychological disability and providing some psychological symptom relief. The plaintiff finds pleasure in artistic activities, such as painting, pottery, woodworking, and photography. The plaintiff is requesting that the defendants pay for pottery lessons and pottery equipment, including an electrical kiln, costing approximately $20,000.00, to enable him to do "self-directed art therapy" at home to relieve stress. The plaintiff has been pursuing his interest in pottery for several years. The plaintiff testified that his counselor, Ms. Sheaffer, prescribed art therapy, and that Dr. Yongue and Dr. Turner also prescribed it.
14. Dr. Turner testified that he wrote a prescription for the plaintiff to receive art therapy, based on the recommendation of the plaintiff's therapist, Ms. Sheaffer, and he listed on the prescription the items the plaintiff asked him to prescribe. In response to written questions concerning the plaintiff's need for art therapy in October 2006, Dr. Turner expressed the opinion that art therapy would reduce the plaintiff's anxiety and suicidal tendencies. Dr. Turner described art therapy as "a creative process in which art modalities are used to release tension and anxiety and to increase self understanding and competency in patients."
15. On April 6, 2007, Dr. Yongue assumed the plaintiff's psychiatric treatment, after the Full Commission designated Dr. Yongue as his authorized treating physician. Dr. Yongue, first board-certified in family medicine, subsequently did a residency in neurology and psychiatry, and became board certified in psychiatry in 1982. Dr. Yongue diagnosed the plaintiff *Page 6 
with depressive disorder, cognitive disorders secondary to electrical injury, and chronic post-traumatic stress disorder.
16. Dr. Yongue wrote the plaintiff a prescription for pottery lessons. She testified that the plaintiff asked for it, but she would not have written the prescription if she did not agree it was a good idea. She testified that "[i]t seems to have been the only modality that he could get some personal sense of work and pleasure from." She further testified that she had no problem prescribing art therapy as a "modality of treatment," and that it was producing a positive result for the plaintiff. She testified that art therapy is being used at hospitals, and is included in overall treatment plans for patients. With respect to the costs of the pottery equipment that the plaintiff is seeking, she stated that she did not consider that aspect, and felt that the plaintiff could go to a location where the equipment is already located.
17. The defendant retained Dr. Schmickley, a psychologist, to perform an independent psychological examination of the plaintiff. Dr. Schmickley expressed opinions concerning a number of areas not at issue here. However, on the issue of art therapy, he opined that art therapy is not evidence-based, research does not support its use for the conditions for which the plaintiff suffers, and art therapy probably will not improve the plaintiff's depression or other conditions. Dr. Schmickley further opined that the plaintiff is probably malingering.
18. After consideration of all of the evidence, the Full Commission finds that the pottery equipment the plaintiff is seeking to allow him to do "self-directed" art therapy at home is not reasonably required to provide relief from his psychological symptoms, or to lessen his disability. Even Dr. Yongue, when confronted with the cost issue, suggested that the plaintiff could go where the equipment is already located. It appears from the evidence that the plaintiff is already receiving art therapy as a part of Ms. Sheaffer's treatment plan. The defendant is not *Page 7 
obligated to pay for the plaintiff's home pottery endeavors. While art therapy may be an accepted modality of treatment for some psychological conditions, the pottery equipment and lessons the plaintiff is seeking are not medically necessary for him.
19. From 2000 to 2007, the plaintiff presented to Physicians East, P.A., as well as other medical providers, for a variety of conditions and ailments. The defendants denied some of these charges, requiring them to be paid by other sources.
20. The plaintiff also received treatment at Beaufort County Hospital on January 16, 2007 for a panic attack, and the defendants denied payment of this bill. The defendants are obligated to pay this bill, as his compensable conditions are reasonably related to this treatment.
21. The defendants are obligated to pay for all medical expenses which are reasonably related to the plaintiff's compensable injury. At the hearing before the Deputy Commissioner, the plaintiff presented evidence of the payment status of a number of medical charges. The plaintiff also incurred some out-of-pocket expenses for medical costs paid by Medicare.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The plaintiff failed to present sufficient evidence to support a finding that he suffers from diabetes as a result of taking Zyprexa or any other prescribed medication. Holley v. ACTS Corp. 357 NC 228,581 S.E.2d 750 (2003).
2. The evidence of record does not establish that the pottery lessons and equipment the plaintiff is seeking as art therapy are reasonably necessary to provide relief or to lessen his disability. N.C. Gen. Stat. § 97-25; Winders v. Edgecombe County Home Health Care, ___ N.C. App.___,653 S.E.2d 575 (2007). *Page 8 
3. The defendants are obligated by prior Orders of the North Carolina Industrial Commission to pay all medical expenses which are reasonably related to the plaintiff's compensable injury. The defendants are obligated to reimburse all sources paying medical bills for the plaintiff's compensable conditions. The defendants are obligated to pay according to the North Carolina Industrial Commission fee schedule. The plaintiff is entitled to reimbursement for his out-of-pocket expenses. The plaintiff provided sufficient information of record from which the defendants can determine or investigate what costs must be reimbursed. Additionally, the January 16, 2007 treatment the plaintiff received at Beaufort County Hospital for a panic attack, and well as the accompanying medical transport, is reasonably related to the plaintiff's compensable injuries, and thus the defendants are obligated to pay these bills. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claims for medical compensation for diabetes treatment and for pottery lessons and equipment are DENIED.
2. The defendants shall reimburse the plaintiff for any out-of-pocket expenditures that he can reasonably document in connection with medical charges which are reasonably related to his compensable injury. The defendants shall also reimburse other payors for medical payments for treatment the plaintiff received for his compensable conditions. The defendants shall a conduct proper investigation, based upon the records presented, to determine where reimbursements shall be directed. *Page 9 
3. Defendants shall bear the costs.
This the ___ day of August 2008.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER