DAVID M. JONES, EMPLOYEE/PLAINTIFF v. MODERN CHEVROLET, EMPLOYER, AND
BRENTWOOD SERVICES ADMINISTRATORS, INC., SERVICING AGENT, DEFENDANTS

No. COA08-371

(Filed 2 December 2008)

**Workers' Compensation— termination after return to work—
temporary disability awarded—remand for further findings**

A workers' compensation case was remanded where the
Industrial Commission did not make the necessary findings or
conclusions to explain why it applied *Seagraves v. Austin Co. of
Greensboro*, 123 N.C. App. 228 (1996), and awarded plaintiff
temporary total disability after he injured his right knee, de-
veloped pain in his left knee, had surgery on the right knee,
returned to work but continued to have pain in the left knee,
and was terminated.

Judge Wynn dissenting.

Appeal by Defendants from Opinion and Award entered 29
November 2007 by the North Carolina Industrial Commission. Heard
in the Court of Appeals 23 September 2008.

*Lewis & Daggett, P.A., by Christopher M. Wilkie, for Plaintiff-
Appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Carla Martin
Cobb, for Defendants-Appellants.*

ARROWOOD, Judge.

Modern Chevrolet and Brentwood Services, Inc. (Defendants)
appeal an Industrial Commission Opinion and Award reversing the
Opinion of a Deputy Commissioner and awarding Plaintiff-Appellee
temporary total disability and medical benefits. We remand for addi-
tional findings of fact.

Plaintiff, who was born in 1955, has a high school education and
training as an automobile technician. In March 2004 he was hired by
Defendant as an automobile mechanic. On 11 November 2004
Plaintiff caught his right foot in machinery and suffered a compens-
able injury to his right knee. He was initially treated at Concentra
Medical Center, which prescribed pain medication, ice packs, and
home exercise. Concentra released Plaintiff to return to work, re-

**JONES v. MODERN CHEVROLET**

[194 N.C. App. 86 (2008)]

stricting him from squatting, kneeling, climbing stairs, climbing ladders, or lifting more than 20 pounds. However, Defendant had no light duty work available, so Plaintiff stopped working on 15 November 2004. Plaintiff's right knee did not improve with conservative treatment, and by early December 2004 he had a "decreased range of motion" in his knee.

When an MRI revealed a medial meniscus tear and other damage to his right knee, Plaintiff's treatment was transferred to orthopaedic surgeon Dr. David Martin. Dr. Martin's physicians' assistant, Frank Caruso, recommended arthroscopic surgery on Plaintiff's right knee, and continued the light duty restrictions. On 10 February 2005 Plaintiff was examined by Dr. Martin, to whom he reported left knee pain and the inability to bear weight on his right knee. Dr. Martin recommended arthroscopic surgery for Plaintiff's right knee and a steroid injection in his left knee. Dr. Martin noted that if Plaintiff's left knee continued to be painful then weight bearing x-rays or an MRI might be appropriate.

On 16 February 2005 Plaintiff had arthroscopic surgery on his right knee, which revealed extensive damage and complex tears to the tissues of his knee. Following surgery, Plaintiff was written out of work. On 1 April 2005 he started physical therapy, and on 11 April 2005 Caruso recommended that Plaintiff return to work after several more weeks of physical therapy. Plaintiff returned to work on 25 April 2005 without work restrictions, although he was still being treated by Dr. Martin. Plaintiff's left knee pain continued after he returned to work, and he received a second steroid injection in May 2005. On 13 June 2005 Plaintiff was examined by Dr. Martin, who noted that Plaintiff was suffering from pain and swelling of his left knee. Dr. Martin referred Plaintiff for a left knee MRI, but did not assign work restrictions.

On 1 July 2005 Defendant terminated Plaintiff's employment. The termination notice indicated that Plaintiff was fired for poor workmanship on a recent brake repair. The next day, 2 July 2005, Plaintiff received the results of his left knee MRI, revealing a tear to the medial meniscus and other damage to the left knee. On 7 July 2005 Dr. Martin recommended left knee arthroscopic surgery. Defendants requested an independent medical examination, and in August 2005 Plaintiff was examined by Dr. James Comadoll, who concurred with Dr. Martin's recommendation for surgery. On 27 September 2005 Plaintiff underwent a left knee arthroscopic surgical procedure, which re-

vealed a "large tear" in the meniscus and other damage to his left knee. In October 2005 Plaintiff was released to return to "sedentary work." Plaintiff was evaluated in January 2006, and Dr. Comadoll assigned Plaintiff a 20% permanent partial impairment rating to his right leg, and a 15% permanent partial impairment rating to his left leg. Dr. Martin examined Plaintiff's right knee only, and concurred with the 20% rating.

Defendants initially accepted Plaintiff's 11 November 2004 injury as compensable and he received medical and disability benefits. Defendants suspended Plaintiff's disability benefits on 25 April 2005, when he returned to work at full pay, and discontinued disability benefits when Plaintiff was fired on 1 July 2005. Defendants accepted Plaintiff's left knee injury as compensable and resumed disability payments effective 27 September 2005, the date of Plaintiff's knee surgery. On 28 October 2005 Plaintiff filed an Industrial Commission Form 33 Request for Hearing, seeking disability benefits for the period between 1 July 2005 and 27 September 2005. Defendants denied Plaintiff's claim on the grounds that Plaintiff had been terminated for reasons unrelated to his injury and had not been assigned work restrictions at the time he was terminated. In April 2006 the case was heard by Deputy Commissioner John DeLuca, who in February 2007 issued an Opinion and Award denying Plaintiff's claim for 1 July to 27 September 2005 disability benefits. Plaintiff appealed to the Full Commission, which issued its Opinion and Award on 29 November 2007. The Commission awarded Plaintiff medical benefits and temporary total disability from 1 July 2005 until further order of the Commission. From this Opinion, Defendants have appealed.

## Standard of Review

"Appellate review of an opinion and award from the Industrial Commission is generally limited to determining: '(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact.' " *Hassell v. Onslow Cty. Bd. of Educ.*, 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008) (quoting *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005)). "The Commission's findings of fact 'are conclusive on appeal when supported by competent evidence even though' evidence exists that would support a contrary finding." *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004) (quoting *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982)). However, the "Commission's conclusions of law are reviewed

*de novo.*" *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citations omitted).

---

Defendants argue that the Commission erred by "applying a *Seagraves* analysis." The *Seagraves* test, first articulated by this Court in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996), guides the Commission in deciding whether termination of an injured employee bars him from receiving disability benefits.

"[T]he term 'disability' in the context of workers' compensation is defined as the 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' N.C.G.S. § 97-2(9) [(2007).] Consequently, a determination of whether a worker is disabled focuses upon impairment to the injured employee's earning capacity rather than upon physical infirmity." *Johnson*, 358 N.C. at 707, 599 S.E.2d at 513 (citing *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434-35, 342 S.E.2d 798, 804 (1986)).

A totally disabled employee is entitled to weekly compensation under N.C. Gen. Stat. § 97-29 (2007), and a partially disabled claimant may receive benefits under N.C. Gen. Stat. § 97-30 (2007). However, N.C. Gen. Stat. § 97-32 (2007), provides that:

If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

"Our appellate decisions have defined 'suitable' employment to be any job that a claimant 'is capable of performing considering his age, education, physical limitations, vocational skills, and experience.' " *Shah v. Howard Johnson*, 140 N.C. App. 58, 68, 535 S.E.2d 577, 583 (2000) (quoting *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994)).

This Court has held that refusal to accept suitable employment may be actual or constructive. "The constructive refusal defense is an argument that the employee's inability to earn wages at pre-injury levels is no longer caused by his injury; rather, the employer argues, the employee's misconduct is responsible for his inability to earn wages at pre-injury levels. Because it is the employer who seeks to discon-

tinue disability payments on this basis, the employer has the initial burden of showing that the employee actually engaged in the misconduct." *Williams v. Pee Dee Electric Membership Corp.*, 130 N.C. App. 298, 301, 502 S.E.2d 645, 647 (1998).

"In *Seagraves* the Court of Appeals examined the question of whether an employee can be deemed to have refused suitable employment, thereby precluding injury-related benefits, if she is terminated for misconduct that is unrelated to her workplace injuries." *McRae*, 358 N.C. at 493, 597 S.E.2d at 698. In *McRae*, the North Carolina Supreme Court adopted the *Seagraves* test:

> [T]he test serves to protect injured employees from unscrupulous employers who might fire them in order to avoid paying [benefits, and] . . . serves employers as a shield against injured employees who engage in unacceptable conduct while employed in rehabilitative settings. . . . [If] the former employee is a victim of job-related injuries, the original employer remains responsible for benefit obligations arising out of the employee's job-related injury[.] . . . [I]f the terminated-for-misconduct employee fails to show by the greater weight of the evidence that his or her inability to find or perform comparable employment is due to the employee's work-related injuries, the employer is then freed of further benefit responsibilities.

*McRae*, 358 N.C. at 494-95, 597 S.E.2d at 699-700. The Court summarized the principles underlying its holding:

> The test in *Seagraves* is intended to weigh the actions and interests of employer and employee alike. Ultimately, the *Seagraves* rule aims to provide a means by which the Industrial Commission can determine if the circumstances surrounding a termination warrant preclusion or discontinuation of injury-related benefits. As such, we conclude that this test is an appropriate means to decide cases of this nature.

*Id.* at 495, 597 S.E.2d at 700. Thus, the *Seagraves* test was originally developed to address the issue of "whether an employee, who is disabled as a result of a compensable injury and is provided with light duty employment by the employer, constructively refuses the light duty work and forfeits workers' compensation benefits . . . upon termination of the employment for fault or misconduct unrelated to the compensable injury." *Seagraves*, 123 N.C. App. at 230, 472 S.E.2d at 399.

JONES v. MODERN CHEVROLET

[194 N.C. App. 86 (2008)]

Plaintiff was released to return to work without restrictions. Defendants argue that, as a matter of law, this precludes the application of the *Seagraves* test. Plaintiff, however, urges that his work was in the "nature" of rehabilitative employment. The issue is whether application of the *Seagraves* analysis was appropriate on the facts of this case.

The Commission has previously applied the *Seagraves* test in cases where the plaintiff did not have work restrictions. For example, in *Hogan v. Terminal Trucking Co.*, 190 N.C. App. 758, 660 S.E.2d 911, 913 (2008), the plaintiff was involved in a May 2004 truck accident and was terminated pursuant to company policy. He was released to return to work without restrictions on 12 August 2004. Plaintiff appealed from the Commission's ruling that Plaintiff was not entitled to disability after this date. On appeal, he argued that the Commission erred by concluding that "defendant-employer terminated the plaintiff for misconduct or fault unrelated to the compensable injury, for which a non-disabled employee would ordinarily have been terminated." This Court did not directly address the use of the *Seagraves* test, but its Opinion upheld the Commission's findings and conclusions on the issue, notwithstanding the Commission's use of the *Seagraves* test.

Plaintiff's situation bears some similarities to that of a claimant who returns to work under light duty restrictions and is later terminated. Plaintiff's position required standing, squatting, kneeling, pushing, pulling, and lifting up to 100 pounds. When Plaintiff returned to work on 25 April 2005 he was still being treated for his right knee injury. His left knee injury was not resolved when he returned to work, and between 25 April 2005 and 1 July 2005 Plaintiff continued to experience pain and difficult movement in his left knee. In May he received a steroid injection in his left knee. On 13 June 2005 Plaintiff reported left knee pain to Dr. Martin, who recommended an MRI. On 2 July 2004 MRI results showed significant damage to Plaintiff's left knee, which his treating physicians agreed was causally related to his right knee injury. Thus, treatment of Plaintiff's left knee injury extended Defendants's obligation to pay workers' compensation benefits beyond the date that Plaintiff returned to work, arguably placing Plaintiff in the vulnerable position discussed in *Toastmaster*:

[A] rule that would allow employers to evade benefit payments simply because the recipient-employee was terminated for misconduct could be open to abuse. Such a rule could give employ-

ers an incentive to find circumstances that would constitute misconduct by employees who were previously injured on the job.

*McRae,* 358 N.C. at 495, 597 S.E.2d at 700.

However, although the record evidence might have supported a decision by the Commission to apply the *Seagraves* test, we cannot resolve this issue because the Commission failed to make the necessary findings or conclusions to explain why it applied *Seagraves* to this case.

Further, because Plaintiff returned to work at his full salary and without work restrictions, there is no presumption of continuing disability after he was terminated. Again, the record contains evidence that might support a finding of disability. For example, in *Britt v. Gator Wood, Inc.,* 185 N.C. App. 677, 682, 648 S.E.2d 917, 921 (2007), the plaintiff returned to work without restrictions, but an MRI later revealed a torn meniscus requiring surgery. On appeal, the defendant argued that "since plaintiff had not yet been written out of work or assigned any work restrictions, he has not proven that he was disabled" before the date he obtained an MRI. This Court held that the Commission could "reasonably draw the inference that plaintiff's condition on 1 June 2002 was the same as his condition a mere two weeks later on 17 June 2002[.]" Similarly, the day after the instant Plaintiff was terminated he was determined to have significant damage to his left knee, requiring surgery. However, the Commission failed to make findings and conclusions regarding Plaintiff's disability between 1 July and 27 September 2005.

"There are no findings of fact as to medical evidence, evidence of reasonable efforts to obtain employment, or evidence of the futility of plaintiff's seeking employment. . . . Because the Commission's findings of fact are insufficient to enable this Court to determine plaintiff's right to compensation, this matter must be remanded for proper findings on this issue." *Silva v. Lowe's Home Improvement,* 176 N.C. App. 229, 237, 625 S.E.2d 613, 620 (2006) (citations omitted).

Moreover, certain of the Commission's purported findings of fact are summaries or recitations of witness testimony, rather than actual findings of fact. These include the following:

19. Upon a return appointment to Dr. Martin on June 13, 2005, Plaintiff was noted to have crepitus, or grinding, in his right knee, as well as popping, weakness and a small amount of right knee swelling. Dr. Martin also noted that Plaintiff

had a moderate effusion in the left knee, tenderness over the inside of the knee on the medial joint line over the medial meniscus, and grinding in the front of the left knee. Dr. Martin also directly related the left knee problems to the original work injury and the overcompensation on the left side due to the problems on the right side. As a result, Plaintiff was referred for a left knee MRI. Dr. Martin noted that Plaintiff was working 'full duty' but did not give any work restrictions at that time.

. . . .

21. Plaintiff was terminated by Defendant-Employer on July 1, 2005. . . . [The termination notice] states that Plaintiff was terminated for poor workmanship on a repair job to a brake fluid supply line[.] . . . Defendant-Employer's service manager Jeff Keith testified that Plaintiff was terminated for overcharging the customer on that same work job and for the workmanship. Mr. Keith also testified that . . . at least one other employee who also worked on that same vehicle overcharged for services and was not terminated. Finally, Mr. Keith testified that Plaintiff's personnel file contained no complaint for poor performance . . . other than the alleged break repair incident on June 25, 2005.

22. Regarding the repair job on June 25, 2005, for which he was terminated, Plaintiff testified that he performed the standard, appropriate service repairs and tests to that same vehicle, as needed and required, and that following the post-repair test drive, no fluid drippage occurred. Plaintiff testified that if fluid drippage occurred after the test drive, it is reparable at no additional cost to the customer, and that he would have repaired the supply line again if drippage had occurred after the test drive. Plaintiff further testified that his co-workers were shocked that he was terminated for such a reason because that is not a reason typically given for termination in the car maintenance industry.

"This Court has long held that findings of fact must be more than a mere summarization or recitation of the evidence and the Commission must resolve the conflicting testimony." *Lane v. American Nat'l Can Co.*, 181 N.C. App. 527, 531, 640 S.E.2d 732, 735 (2007) (citing *Hansel v. Sherman Textiles*, 304 N.C. 44, 59, 283 S.E.2d 101, 109 (1981)) (other citations omitted). " '[R]ecitations

of the testimony of each witness *do not* constitute *findings of fact* by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented.' " *Winders v. Edgecombe Cty. Home Health Care*, 187 N.C. App. 668, 673, 653 S.E.2d 575, 579 (2007) (quoting *In re Green*, 67 N.C. App. 501, 505 n. 1, 313 S.E.2d 193, 195 (1984)).

"While the Commission is not required to make findings as to each fact presented by the evidence, it must find those crucial and specific facts upon which the right to compensation depends so that a reviewing court can determine on appeal whether an adequate basis exists for the Commission's award." *Johnson*, 358 N.C. at 705, 599 S.E.2d at 511 (citations omitted). "Where the findings are insufficient to enable the court to determine the rights of the parties, the case must be remanded to the Commission for proper findings of fact." *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987). "On remand, the Commission may reopen the proceedings to take additional evidence if it determines on the record that there is insufficient evidence[.]" *Calloway v. Shuford Mills*, 78 N.C. App. 702, 709, 338 S.E.2d 548, 553 (1986).

For the reasons stated above, we remand the instant matter to the Full Commission for findings and conclusions consistent with this opinion.

Remanded.

Judge BRYANT concurs.

Judge WYNN dissents by separate opinion.

WYNN, Judge, dissenting.

The issue on appeal is whether the Industrial Commission was correct in finding and concluding that Defendants failed to demonstrate that Plaintiff's loss of, or diminution in, wages was attributable to his own wrongful act, resulting in the loss of his employment, and not due to his work-related disability. *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). Contrary to the majority opinion, I would reach the threshold issue of whether the Industrial Commission appropriately applied *Seagraves*, concluding that Plaintiff was wrongfully terminated and is entitled to

receive temporary total disability compensation. Finding that the Commission's application of the *Seagraves* analysis was proper, I would affirm the Commission's decision.

In *Seagraves*, this Court established a test for determining whether an injured employee's right to continuing workers' compensation benefits, after being terminated for misconduct, is appropriate. *Id.* Thereafter, our Supreme Court adopted the *Seagraves* analysis, stating:

> [U]nder *the Seagraves'* test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury.

*McRae v. Toastmaster, Inc.*, 358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004) (citation omitted).

The majority appears to intertwine two separate analyses: (1) Did the Commission properly apply *Seagraves*? (2) If not, is the conclusion that Plaintiff is entitled to receive temporary total disability compensation justified by the Commission's findings of fact? The majority concludes that "the Commission failed to make the necessary findings or conclusions to explain why it applied *Seagraves* to this case." However, after careful review of the record, I conclude that the findings made by the Commission support its application of *Seagraves*.

On review of the case law, there are a number of workers' compensation cases in which our courts have applied the *Seagraves* analysis without making a specific finding that plaintiff-employee was on light or rehabilitative duty prior to his termination. In *Flores v. Stacy Penny Masonry Co.*, 134 N.C. App. 452, 518 S.E.2d 200 (1999), the Court upheld the Industrial Commission's decision, which applied the *Seagraves* inquiry and found that plaintiff was not barred from receiving disability benefits after being terminated. In *Flores*, the plaintiff sustained a compensable injury on 9 April 1992, returned to work on 9 June 1992 without modification, and periodically missed work at the direction of his physician until 16 April 1993, when he was terminated. The Court held, "pursuant to our decision in *Seagraves*, 123 N.C. App. 228, 472 S.E.2d 397, the Commission's findings supported its conclusion that plaintiff was not barred from

receiving disability benefits after 16 April 1993." *Flores*, 134 N.C. App. at 459, 518 S.E.2d at 205. *See also Workman v. Rutherford Elec. Membership Corp.*, 170 N.C. App. 481, 613 S.E.2d 243 (2005) (applying *Seagraves* without requiring a finding of light duty or rehabilitative employment where an employee was fired for periodically missing work due to accident-related symptoms).

Further, our Supreme Court has explained the underlying purpose of the *Seagraves* analysis, stating:

> On the one hand, the test serves to protect injured employees from unscrupulous employers who might fire them in order to avoid paying them their due benefits. On the other hand, according to the lower court, the test simultaneously serves employers as a shield against injured employees who engage in unacceptable conduct while employed in rehabilitative settings.

*McRae*, 358 N.C. at 494, 597 S.E.2d at 699. The Court's opinion in *McRae* illustrates the intention behind the *Seagraves* analysis: to adopt an inquiry that carefully balances the interest of protecting injured employees who return to work in particularly vulnerable positions while also guarding against potential defendant-employer abuse. Arguably, given this Court's decision in *Flores* and the rationale articulated in *McRae*, the determinative issue is whether the employee, who is urging the application of *Seagraves*, was in the type of vulnerable position the analysis was originally adopted to protect.

Here, while the Commission concluded that Plaintiff's "job was not modified in any way and he did not work under any restrictions," it also concluded that, under *Seagraves*, Defendants "failed to show that plaintiff was terminated for misconduct[,] . . . that the same misconduct would have resulted in the termination of a non-disabled employee, and that the termination was unrelated to her compensable injury." Drawing from the majority opinion, there is competent evidence in the record to support the finding that the Plaintiff was in a position similar to, if not the same as, rehabilitative or light-duty employment prior to his termination. As the majority states, Plaintiff's position required a significant amount of "standing, squatting, kneeling, pushing, pulling and lifting up to 100 pounds." Yet, when Plaintiff returned to work, he was still being treated for his injury. Further, Dr. Martin, his treating physician, testified that the "plan was to return him to work, see him back two to three months later to evaluate his knee, and consider placing him at maximum medical improvement" at a later date.

CAREY v. NORMENT SEC. INDUS.

[194 N.C. App. 97 (2008)]

Given the Plaintiff's vulnerable status at the time he returned to work and the evidence in the record suggesting Plaintiff was still being treated for his injury, I conclude that the application of *Seagraves* was proper and the Commission's decision should therefore be affirmed.