* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding good grounds to receive further evidence, but not to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 MOTION TO SUBMIT ADDITIONAL EVIDENCE
Defendants moved, pursuant to N.C. Gen. Stat. § 97-85 and Rule 701(6) of the North Carolina Industrial Commission Rules, to admit into evidence a Form 90 listing the earnings of Plaintiff from August 7, 2006 to present, on the grounds that Plaintiff completed the Form 90 after the hearing before the Deputy Commissioner, and that the Form 90 contains relevant evidence regarding Plaintiff's claim of disability. After consideration of the written and the oral arguments of all counsel, Defendants' Motion is hereby GRANTED. Accordingly, the Form 90 completed by Plaintiff, and the attachments thereto, are hereby admitted into evidence.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Stonewood Insurance Company (hereinafter referred to as "Defendant-Carrier") provided workers' compensation insurance coverage at all times relevant to these proceedings, and Defendant-Carrier is correctly named.
4. Plaintiff's average weekly wage is $455.69, yielding a compensation rate of $303.80 per week, based upon the Form 22.
5. The parties stipulated to the following documents being admitted into evidence as *Page 3 
stipulated exhibits:
 a. Stipulated Exhibit one (1) — Plaintiff's medical records;
 b. Stipulated Exhibit two (2) — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit three (3) — Videotape of Plaintiff's physical activity on January 24, 2007, February 8, 2007, February 22, 2007, April 10, 2007, April 11, 2007, and May 14, 2007;
 d. Stipulated Exhibit four (4) — Surveillance Report dated May 18, 2007;
 e. Stipulated Exhibit five (5) — Plaintiff's personnel file;
 f. Stipulated Exhibit six (6) — Accounting of wages earned by Plaintiff while working as a cab driver for Cherry Cab Company from February 1, 2007 through June 22, 2007 (submitted by the parties subsequent to the hearing before the Deputy Commissioner).
 * * * * * * * * * * * ISSUES
The issues for determination are:
1. Whether Plaintiff sustained a compensable injury by accident, as defined by the North Carolina Workers' Compensation Act, on August 7, 2006?
2. Whether Plaintiff is entitled to benefits under the North Carolina Workers' Compensation Act?
3. Whether Plaintiff is entitled to ongoing medical treatment under the North Carolina Workers' Compensation Act?
 * * * * * * * * * * * *Page 4 
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 42-year-old high school graduate. Carolina Technical Plastics, Inc. (hereinafter referred to as "Defendant-Employer") is an injection mold plant that contracts to make parts for appliances and automobiles.
2. Plaintiff initially applied for a position with Defendant-Employer as a mold technician. However, Defendant-Employer decided not to fill the mold technician position, and instead, offered Plaintiff a material handler position. Plaintiff's duties as a material handler were to keep the crates containing raw materials required to operate the machinery full, and to empty the crates of the product pieces as they became full. As a raw material crate became empty, Plaintiff would remove it from the machine and replace it with a full one, so that the production would continue uninterrupted.
3. Plaintiff utilized a pallet jack and a forklift to move the raw material crates around. The raw materials crates measured 48 inches by 45 inches, with a height of approximately three (3) feet, and were typically stacked on top of each other. Due to the limited space within which to maneuver the forklift, and in an effort to save time, on occasion, Plaintiff moved empty or nearly empty crates manually, rather than attempting to use the forklift.
4. On August 7, 2006, some time prior to 9:00 a.m., Plaintiff was attempting to replace a nearly empty raw materials crate with a full raw materials crate. Plaintiff got off of the forklift and pushed the nearly empty raw materials crate out of the way, so that he could replace it. Plaintiff testified that he chose to push this raw materials crate to save time, and because there was a minimum amount of space within which to work. The raw materials crate that Plaintiff *Page 5 
was pushing caught onto a metal pole or something else on the concrete floor. Plaintiff shoved the raw materials crate and immediately felt a pain that he described as a "tearing sensation" in his lower back. Plaintiff continued to work until the end of his shift at 4:30 p.m.; however, later that day, his lower back became sore. Thus, Plaintiff clocked out and went home to rest. Plaintiff did not report that he suffered a work injury on the day that it happened, August 7, 2006, due to his concern about missing time from work, as he was still on his initial 90-day probationary period.
5. On August 8, 2006, the following morning, Plaintiff woke up in pain and could not put weight on his right leg. As a result, Plaintiff called Defendant-Employer and informed a man by the name of "Tony" that he would not be coming in to work. Plaintiff also left a telephone voice message for Ms. Melinda Kraus, Defendant-Employer's human resources manager, informing her that he hurt his lower back, and that he would be seeking medical treatment. Plaintiff's supervisor, Mr. Frances Robert Gallinato, Jr., testified that he found out about Plaintiff's work injury on the day after it happened.
6. The Full Commission finds, based upon the greater weight of the evidence, that since Plaintiff told his supervisor, Mr. Gallinato, about his August 7, 2006 work injury the day after the work injury occurred, Defendants had actual notice of Plaintiff's August 7, 2006 work injury, and so Defendants suffered no prejudice by not receiving written notice of the work injury within 30 days.
7. Plaintiff made an appointment with Russell K. Davis, D.C., a chiropractor, for August 9, 2006, but decided to go to the emergency room immediately when the pain increased. Accordingly, on August 8, 2006, Plaintiff went via ambulance to the emergency department at Craven Regional Medical Center in New Bern, North Carolina. He informed the triage staff *Page 6 
there that he suffered from pulled muscles in the past, but that this pain was much worse. The intake form from this visit indicates that Plaintiff informed the emergency department staff that he injured his lower back at work on August 7, 2006, after "moving a box."
8. Dr. Kevin Charles Geer examined Plaintiff in the emergency room. Based upon his examination, Dr. Geer diagnosed Plaintiff with lower back strain, sciatic nerve injury, and hypertension, and provided him with some medication. In addition, Dr. Geer wrote a note taking Plaintiff out of work for three (3) to five (5) days, ordered magnetic resonance imaging (MRI) of his lumbar spine, and follow-up care with a neurosurgeon, Dr. Mark Charles Held. Plaintiff underwent the MRI August 9, 2006, which revealed that Plaintiff had a herniated disc at the L4-L5 level of his spine, with associated central spinal and right neural foraminal stenosis.
9. Later on August 9, 2006, Plaintiff presented for his previously scheduled appointment with Dr. Davis. Plaintiff provided a history of some lower back pain, with an exacerbation of acute lower back pain radiating into his right leg, beginning on August 7, 2006, after moving raw materials crates at work. Dr. Davis did not have the MRI results at that time, but his own examination indicated a problem at the L4-L5 level of Plaintiff's spine. Dr. Davis recommended a neurosurgical consultation, but Ms. Kraus, Defendant-Employer's human resources manager, recommended that Plaintiff continue with Dr. Davis. Dr. Davis thereafter began a chiropractic treatment plan over the next four (4) to six (6) weeks. During the treatment plan, Dr. Davis recommended that Plaintiff only perform light-duty work; however, as Defendant-Employer did not have any light-duty positions available, Dr. Davis took Plaintiff completely out of work.
10. On August 17, 2006, during the course of the treatment Plaintiff was receiving from Dr. Davis, Plaintiff provided Defendants with a recorded statement that corroborates the *Page 7 
history provided by Plaintiff to both Dr. Davis and to Dr. Geer, and also corroborates his hearing testimony before the Deputy Commissioner.
11. Plaintiff underwent the chiropractic treatment recommended by Dr. Davis without success. By September 13, 2006, Dr. Davis opined that Plaintiff was not improving, and that he should seek neurosurgical treatment. Dr. Davis further opined that at that time, Plaintiff should be limited to clerical work, with no lifting, no bending, no standing, and no squatting.
12. Because Plaintiff could not afford to see a neurosurgeon, he presented to Dr. Gerald Pelletier, Jr. at the Merci Clinic in New Bern, North Carolina on November 14, 2006. Dr. Pelletier examined Plaintiff and noted an ". . . exquisitively positive straight leg raise on the left and on the right side, [and] . . . a contra lateral straight leg raise, positive." Dr. Pelletier's treatment plan included medications, bed rest, mild exercises, and a referral to a neurosurgeon.
13. Due to Defendants' continued refusal to authorize neurosurgical treatment, Plaintiff returned to Dr. Pelletier on December 12, 2006, and again on January 9, 2007. At the January 9, 2007 visit with Dr. Pelletier, Dr. Pelletier sent Plaintiff to the emergency department at Craven Regional Medical Center, with the hope that the medical staff there would order a neurosurgical consultation at that time. Since Dr. Pelletier was of the opinion, at this point, that Plaintiff was near emergency status with his increasing pain and other symptoms, he took it upon himself to call Dr. Held, the neurosurgeon, to obtain an appointment for Plaintiff.
14. On January 9, 2007, Plaintiff saw Dr. Held at Carolina Craniospinal Neurosurgery in New Bern, North Carolina. Plaintiff denied any lower back problems prior to his August 7, 2006 work injury, but he did report that he had a previous left neck and left trapezius strain, which he believed to be mistaken for prior lower back problems. Plaintiff's pain and other symptoms began on the right side of his lower back; however, by this point, Plaintiff complained *Page 8 
of left-sided lower back pain. Dr. Held recommended a repeat MRI in order to account for this discrepancy. On March 23, 2007, Plaintiff returned to Dr. Held, again complaining of right-sided pain. At that time, Dr. Held recommended surgery in order to treat Plaintiff's symptoms.
15. Due to financial hardship after Plaintiff stopped working for Defendant-Employer, since Defendant-Employer had no light-duty work available to meet Dr. Davis' restrictions, Plaintiff began a part-time job driving a taxicab for a family friend with Cherry Cab Company in Havelock, North Carolina on February 1, 2007. Plaintiff testified that he thought driving the taxicab would be the least strenuous job that he could do in his physical condition. Plaintiff further testified that it was difficult for him to get into and to get out of the taxicab, and that he did not lift any of his passenger's heavy baggage.
16. Documentation submitted by the parties subsequent to the hearing before the Deputy Commissioner indicates that Plaintiff earned a total of $4,451.53 between February 1, 2007 and June 22, 2007 by driving the taxicab. In addition, the Form 90 dated December 4, 2007 indicates that Plaintiff earned a total of $7,447.68 between June 24, 2007 and December 1, 2007 by driving the taxicab. The documentation submitted from Cherry Cab Company, both for the time period of February 1, 2007 through June 22, 2007, as well as attached to the Form 90 for the time period of June 24, 2007 through December 1, 2007, indicates that there were some weeks in which Plaintiff earned greater wages driving the taxicab than at his employment with Defendant-Employer prior to his August 7, 2006 work injury. However, Plaintiff testified that his work driving the taxicab was sporadic, and the documentation submitted from Cherry Cab Company corroborates this testimony, indicating significant fluctuations in weekly earnings.
17. In addition to driving the taxicab, Plaintiff also assisted his brother at his scrap metal business by making deliveries to a salvage yard. Although Plaintiff did not get paid for *Page 9 
making these deliveries, the evidence at the hearing before the Deputy Commissioner indicates that he also sold various items to the salvage yard on his own, totalling $1,100.00. The Form 90 dated December 4, 2007 also indicates that Plaintiff earned $73.25 on November 28, 2006 and $17.60 on December 5, 2006 by selling scrap metal. The Full Commission finds, based upon the greater weight of the evidence, that the proceeds Plaintiff received from selling scrap metal are not indicative of his wage-earning capacity, and are thus not to be included in the computation of Plaintiff's earnings since his August 7, 2006 work injury.
18. Although the Form 90 dated December 4, 2007 also contains an entry in the amount of $165.30 beside the space provided on the Form 90 for "Gross Earnings," immediately below the $73.25 and the $17.60 entries, there is nothing else on the form to either corroborate or document from where this amount came, and it is not the total of $73.25 and $17.60. Therefore, the Full Commission finds, based upon the greater weight of the evidence, that the $165.30 entry will not be included in the computation of Plaintiff's earnings since his August 7, 2006 work injury.
19. Ms. Elizabeth Ann Spivey, office manager for Goldman Metals, testified that Plaintiff did not unload all of the materials that he delivered to Goldman Metals, since there were warehouse workers there to assist him.
20. Eventually, North Carolina state vocational rehabilitation services agreed to sponsor the surgery recommended by Dr. Held. On August 30, 2007, Dr. Held performed the surgery on Plaintiff, after which time Plaintiff was to avoid driving the taxicab for three (3) weeks. There are no medical records in evidence after September 7, 2007, at which time Plaintiff was one and one-half (1 1/2) weeks out of surgery and doing well, with no pain *Page 10 
radiating to his leg. Plaintiff has yet to be designated at maximum medical improvement, evaluated for a permanent partial disability rating, or released from Dr. Held's care.
21. At his deposition, Dr. Held opined that it was possible for Plaintiff to drive a taxicab on his "good" days, and that the information provided to him at that time concerning Plaintiff driving a taxicab following his August 7, 2006 work injury did not alter his opinion that Plaintiff's August 7, 2006 work injury caused the lower back condition that he treated. Moreover, Dr. Held testified that neither this information nor the video surveillance tape that he reviewed of Plaintiff's activities altered his opinions concerning the causation of Plaintiff's August 7, 2006 work injury, and that he did not question Plaintiff's credibility concerning how the work injury occurred.
22. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's testimony concerning his August 7, 2006 work injury is credible, and that his testimony is corroborated by both the medical evidence from his treating health care providers, as well as from lay evidence, including Plaintiff's recorded statement of August 17, 2006.
23. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff suffered a compensable injury by accident arising out of and in the course and the scope of his employment with Defendant-Employer on August 7, 2006. As a result of Plaintiff's August 7, 2006 work injury, Plaintiff suffered a herniated disc at the L4-L5 level of his spine, thereby rendering Plaintiff temporarily and totally disabled from his employment with Defendant-Employer from August 8, 2006 through January 31, 2007, when Plaintiff was completely out of work, pursuant to Dr. Davis' orders, as well as for the period from August 30, 2007, the date of Plaintiff's surgery, through September 22, 2007, during which time Plaintiff's treating physician ordered that he not drive the taxicab for three (3) weeks. *Page 11 
24. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's work driving the taxicab demonstrates that he is capable of some work. However, the evidence shows that Plaintiff's pre-maximum medical improvement work driving the taxicab was sporadic, being less than 40 hours per week, and he could not perform all the lifting functions of the job. The documentation submitted from Cherry Cab Company corroborates Plaintiff's testimony, indicating significant fluctuations in weekly earnings. Further, Plaintiff was only able to get the job due to the gratuity of a family friend, which is not indicative of Plaintiff's true ability to obtain a job within his restrictions in the local job market. Although there were some weeks from February 1, 2007 through December 1, 2007 in which Plaintiff earned greater wages driving the taxicab than at his employment with Defendant-Employer prior to his August 7, 2006 work injury, the Full Commission affords greater weight to Plaintiff's testimony that his work driving the taxicab was sporadic, and that he would not have gotten the job but for his family friend affiliated with Cherry Cab Company. However, based upon the percentage of time in which Plaintiff was able to drive the taxicab, the Full Commission finds that Plaintiff may have some wage-earning capacity, and was thus only temporarily and partially disabled from February 1, 2007 through August 29, 2007, as well as from September 23, 2007 to the present. However, the extent of Plaintiff's disability cannot be fully determined at this time, since Plaintiff is not at maximum medical improvement, he does not have a permanent partial disability rating, and since Plaintiff only received minimal medical treatment, due to the denial of his claim by Defendants. Defendants are entitled to a week-to-week credit for Plaintiff's actual earnings.
 * * * * * * * * * * * *Page 12 
Based upon the foregoing stipulations and upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and the scope of his employment on August 7, 2006. N.C. Gen. Stat. § 97-2(6) (2007).
2. As a result of Plaintiff's August 7, 2006 work injury, Plaintiff was unable to work in any employment from August 8, 2006 through January 31, 2007, when he was taken out of work by Dr. Davis, as well as for the period from August 30, 2007, the date of Plaintiff's surgery, through a three-week period ending September 22, 2007, during which time Plaintiff's treating physician ordered that he not drive the taxicab. Plaintiff is entitled to temporary total disability compensation at the rate of $303.80 per week from August 8, 2006 through January 31, 2007 and from August 30, 2007 through September 22, 2007. N.C. Gen. Stat. § 97-29 (2007).
3. Plaintiff's actual earnings are not indicative of his capacity to earn wages in the competitive job market. Although there were many weeks from February 1, 2007 through December 1, 2007 in which Plaintiff worked and on some weeks he even earned greater wages driving the taxicab than his pre-injury wages with Defendant-Employer, his wages from driving the taxicab are not indicative of his capacity to earn wages in the competitive job market. Plaintiff's work as a taxicab driver was sporadic, he would not have gotten the job but for the gratuity of a family friend affiliated with Cherry Cab Company, and Plaintiff could not perform all of the lifting functions of the job, therefore the job constituted unsuitable or "makework" employment and Plaintiff remained temporarily totally disabled. Peoples v. Cone Mills, 316 N.C. 426,342 S.E.2d 798 (1986). *Page 13 
4. However, because Plaintiff's doctors have released him to light duty work and based upon the percentage of time in which he has been able to perform the taxicab job, as modified, Plaintiff may have had some wage-earning capacity, from February 1, 2007 through August 29, 2007, as well as from September 23, 2007 to the present. Since Plaintiff is not at maximum medical improvement and due to the limited medical treatment he has received because this is a denied claim, the extent of Plaintiff's disability cannot be fully determined at this time. N.C. Gen. Stat. § 97-30 (2007); Calloway v. Mills, 78 N.C. App. 702,338 S.E.2d 548 (1986).
5. Because Plaintiff is not at maximum medical improvement, he is not required to elect his remedies under the North Carolina Workers' Compensation Act at this time. Outerbridge v. Perdue Farms, Inc.,181 N.C. App. 50, 638 S.E.2d 564 (2007). The ultimate question, then, is how to fit Plaintiff's earnings under the statutory scheme provided by the North Carolina Workers' Compensation Act. It is unfair to deny Defendants any type of credit for Plaintiff's earnings, but it is equally unfair to Plaintiff to treat his "make-work" job as indicative of wage-earning capacity in the competitive job market.
6. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of his August 7, 2006 work injury, for so long as medical treatment may be required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability, including, but not limited to, continuing treatment by Dr. Mark Charles Held. N.C. Gen. Stat. § 97-25 (2007).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following: *Page 14 
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $303.80 per week for the period from August 8, 2006 through January 31, 2007, when Plaintiff was completely out of work, pursuant to Dr. Davis' orders, as well as for the period from August 30, 2007, the date of Plaintiff's surgery, through September 22, 2007, during which time Plaintiff's treating physician ordered that he not drive the taxicab. The accrued compensation shall be paid in a lump sum to Plaintiff.
2. Also, subject to a week-to-week credit granted to Defendants for wages earned by Plaintiff during the stated periods of time and subject to a reasonable attorney's fee herein approved which shall be deducted after Defendants' credit, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $303.80 per week from February 1, 2007 through August 29, 2007 and from September 23, 2007 through the present. The accrued compensation shall be paid in a lump sum to Plaintiff. 3. A reasonable attorney's fee of 25 percent of the compensation awarded to Plaintiff in paragraph one (1) and in paragraph two (2), above, is hereby approved for Plaintiff's counsel, payable as follows: 25 percent of the lump sum awarded to Plaintiff shall be deducted and paid directly to Plaintiff's counsel and thereafter 25 percent of each weekly payment due Plaintiff shall be deducted and paid directly to Plaintiff's counsel.
4. Defendants shall pay for all medical expenses incurred or to be incurred in the future as a result of Plaintiff's August 7, 2006 work injury, according to procedures approved by the Industrial Commission.
 5. Defendants shall pay the costs of these proceedings. *Page 15 
This the __ day of October 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER