An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1358
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014


KERRY RAY HARRISON,
    Employee-Plaintiff,

v.                                    From the North Carolina
                                      Industrial Commission
                                      I.C. No. 167921

GEMMA POWER SYSTEMS, LLC,
    Employer,

    and

TRAVELERS INSURANCE COMPANY,
    Carrier,

    Defendants.


Appeal by plaintiff from opinion and award entered 16 September 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 April 2014.


> *Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson and Fred D. Poisson, Jr., for plaintiff-appellant.*
>
> *Jessica E. Lyles for defendants-appellees.*


HUNTER, JR., Robert N., Judge.


Kerry Ray Harrison ("Plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission denying

his claim for indemnity benefits and concluding that his claim for additional medical benefits is time-barred by N.C. Gen. Stat. § 97-25.1 (2013). Plaintiff contends that the Industrial Commission's findings of fact are inadequate and that the record evidence entitles him to disability (*See* N.C. Gen. Stat. §§ 97-29, -30 (2013)) and/or permanent impairment (*See* N.C. Gen. Stat. § 97-31 (2013)) indemnity benefits. Plaintiff further contends that his right to future indemnity payments undermines the Industrial Commission's statute of limitations analysis. For the following reasons, we hold that Plaintiff's right to additional medical compensation is time-barred, but agree that the Industrial Commission's findings and conclusions concerning Plaintiff's right to disability and permanent impairment benefits are inadequate.

## I.   Factual & Procedural History

Plaintiff began working for Gemma Power Systems, LLC ("Defendant")[1] in 2000 as a pipefitter. In this role, Plaintiff was required to perform manual labor that often required him to lift between 40 and 100 pounds, as well as perform overhead work.

---

[1] Defendant's actions described herein also include the actions of Defendant's insurance carrier and co-defendant, Travelers Insurance Company.

On 2 March 2001, Plaintiff suffered a compensable injury while working for Defendant when he was struck on the head by a falling pipe fixture. Plaintiff was wearing a hard hat at the time. The impact knocked Plaintiff to the ground, leaving him dazed and with a headache.

A few days after the accident, Plaintiff told Defendant that he was having severe neck pain and requested medical attention. Defendant sent Plaintiff to Sandhills Medical Center for evaluation and treatment. A CT scan showed no evidence of fracture and Plaintiff was referred to a chiropractor for continuing treatment. Plaintiff received chiropractic treatment from 5 March 2001 until 24 May 2001.

While being treated by the chiropractor, Plaintiff returned to work and performed light duty tasks until he was laid off by Defendant on 22 April 2001. After being laid off, Defendant referred Plaintiff to Dr. Dixon Gerber ("Dr. Gerber"), an orthopedic surgeon. Dr. Gerber evaluated Plaintiff on 27 June 2001 and opined in his post-evaluation report as follows:

> I feel this gentleman sustained an acute cervical injury back on 03-02-01. At the presenttime [sic] I think he is at maximum medical improvement and has no permanent partial disability. I think this patient could return to full unrestricted duties commencing 07-02-01. At this time, I foresee no further medical treatment

necessary.

After seeing Dr. Gerber, Plaintiff filed a Form 18 on 6 July 2001 with the Industrial Commission documenting and noticing the 2 March 2001 injury.

Subsequently, Defendant rehired Plaintiff as a pipefitter. However, after several instances of Plaintiff missing work and arriving late for work, Defendant terminated Plaintiff. From July 2001 until February 2003, Plaintiff worked for a number of employers in the construction industry as a pipefitter. Thereafter, Plaintiff worked as a laborer, security guard, theater worker, electrician's helper, and as a loader. In May 2009, Plaintiff stopped working altogether to attend community college, but later obtained a part-time position at the library as a computer lab assistant. Plaintiff testified that during periods of unemployment, he collected unemployment benefits.

Notwithstanding Dr. Gerber's assessment in July 2001, Plaintiff continued to report problems with his neck in the years that followed. On 27 June 2002, Plaintiff sought medical treatment on his own and had an MRI performed at Southeastern Regional Medical Center that revealed a "mild broad base disc bulge at C6-7." Plaintiff was referred to a neurosurgeon. At Defendant's request, Plaintiff had an independent medical

evaluation performed by Dr. Robert Lacin ("Dr. Lacin") at Goldsboro Neurological Surgery. In his medical report dated 2 October 2002, Dr. Lacin opined as follows:

> In regards to the origin of these complaints, with a temporal relationship to the accident, in absence of any other problems with his neck, I certainly have no doubt that the patient's symptoms are related to this incident of March 2, 2001. However, whether or not they are structural, soft tissue related and/or psychogenic/somatoform, at the present time I cannot tell with certainty.

Dr. Lacin recommended that Plaintiff see an interventional pain management specialist to perform diagnostic joint blocks, and, if necessary, a cervical discogram.

Following a motion by Plaintiff to authorize additional neck treatment, the Industrial Commission filed an order on 7 July 2003 compelling Defendant to "provide for plaintiff to undergo the diagnostic testing recommended by Dr. Lacin with a specialist of plaintiff's choice." Subsequently, from December 2003 to November 2006, Plaintiff was seen by Dr. T. Hemanth Rao ("Dr. Rao") at Neurology Consultants of the Carolinas, and later by Dr. Paul McDonald ("Dr. McDonald"). Plaintiff's continued neck pain and headaches were documented at these visits and Dr. McDonald referred Plaintiff for a surgical opinion.

On 11 December 2008, Plaintiff filed a Form 33 with the Industrial Commission wherein Plaintiff alleged that Defendant refused to authorize the medical treatment recommended by Dr. McDonald. On 22 December 2008, the Industrial Commission ordered another evaluation by Dr. Rao. However, as a result of a mix-up at the doctor's office, Plaintiff was seen again by Dr. McDonald. Dr. McDonald gave Plaintiff work restrictions of no lifting greater than twenty pounds and no reaching overhead, and again referred Plaintiff for a surgical opinion.

On 27 April 2009, Dr. Alfred Rhyne ("Dr. Rhyne"), board certified in orthopedics, performed an independent medical evaluation of Plaintiff. Dr. Rhyne opined that Plaintiff had "chronic C7 radioculpathy and a history of disk protrusion at C6-7" and recommended that Plaintiff get an MRI of his spine. Defendant, however, refused to authorize the MRI. Nevertheless, Plaintiff sought out and subsequently received an MRI at the Veterans Affairs Medical Center in Fayetteville, which revealed "[m]ultilevel cervical spondylosis . . . in the lower cervical spine" that was "most prominent at C5 and C6." Thereafter, Plaintiff requested that Defendant pay for Dr. Rhyne to read the MRI and render an opinion for further treatment. Defendant refused this request.

On 25 January 2012, Plaintiff filed another Form 33 request with the Industrial Commission alleging that Defendant "failed to authorize plaintiff's request for further treatment with Dr. Rhyne" and raised the issue of Plaintiff's right to indemnity benefits as a result of the 2 March 2001 injury. On 6 February 2012, Defendant filed a Form 33R contending that Plaintiff's claim was "medical only" and barred by the statute of limitations. Record evidence shows that Plaintiff has never received indemnity benefits from Defendant, but did receive payments for authorized medical expenses until 18 May 2009, the date of Defendant's last recorded payment.

On 7 February 2013, the Deputy Commissioner filed an opinion and award concluding that Plaintiff's claim for additional medical compensation was barred by the statute of limitations and denied Plaintiff's request for indemnity benefits. Plaintiff appealed to the Full Commission. On 16 September 2013, the Full Commission affirmed the opinion and award, concluding that Plaintiff's claim for additional medical compensation was time-barred pursuant to N.C. Gen. Stat. § 97-25.1 and that Plaintiff failed to establish the existence of a disability pursuant to *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E.2d 682 (1982), and *Russell v. Lowes Prod.*

*Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff filed timely notice of appeal to this Court on 25 September 2013.

## II. Jurisdiction & Standard of Review

Plaintiff's appeal from the opinion and award of the Full Commission lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-29(a) (2013). *Accord* N.C. Gen. Stat. § 97-86 (2013).

Our review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433–34, 144 S.E.2d at 274.

However, "[c]onclusions of law by the Industrial Commission are reviewable *de novo* by this Court." *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 127, 532 S.E.2d 583, 585 (2000).

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

### III. Analysis

Plaintiff's appeal raises three questions for our review: (1) whether Plaintiff's claim for additional medical compensation from Defendant is time-barred by N.C. Gen. Stat. § 97-25.1; (2) whether the Full Commission erred in denying temporary total and temporary partial disability benefits to Plaintiff; and (3) whether the trial court erred in denying permanent partial impairment benefits to Plaintiff. We address each in turn.

### A. Medical Compensation Benefits

Plaintiff contends that the Full Commission erred in denying him medical compensation benefits for medical expenses incurred after 18 May 2009. We disagree.

In its opinion and award, the Full Commission entered the following pertinent findings of fact:

> 26. Defendant's last payment of medical compensation in this case was a payment of medical benefits made on 18 May 2009.

27. Subsequent to that 18 May 2009 payment, the next document plaintiff filed with the Commission requesting the provision of medical treatment was a Form 33 submitted on 25 January 2012, more than two years following the last payment of medical benefits.

Applicable here, N.C. Gen. Stat. § 97-25.1 provides, in part:

The right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to the expiration of this period, either: (i) the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission, or (ii) the Commission on its own motion orders additional medical compensation.

*See also Busque v. Mid-Am. Apartment Communities*, 209 N.C. App. 696, 707, 707 S.E.2d 692, 700 (2011) (applying the two-year statute of limitations in a straight-forward manner and concluding that the plaintiff's right to medical compensation had terminated). Accordingly, based on its findings of fact, its reading of N.C. Gen. Stat. § 97-25.1, and this Court's decision in *Busque*, the Full Commission concluded that Plaintiff was not entitled to medical compensation benefits after 18 May 2009.

On appeal, Plaintiff does not challenge the evidentiary support for Finding of Fact 26 or 27. Rather, Plaintiff argues that "the last payment of compensation in the claim has not yet

taken place" because "Plaintiff is still owed payment for temporary total disability and/or permanent partial impairment." Stated differently, Plaintiff argues that the two-year statute of limitations period found in N.C. Gen. Stat. § 97-25.1 has not yet begun and will not begin until Plaintiff receives a payment from Defendant for indemnity benefits. Plaintiff's argument on this point is misguided for several reasons. First, Plaintiff's argument ignores the plain language of the statute. "The right to medical compensation shall terminate two years after the employer's *last* payment of medical or indemnity compensation . . . ." N.C. Gen. Stat. § 97-25.1 (emphasis added). In context, the word "last" does not refer to a hypothetical future payment that Plaintiff may be entitled to receive after presenting a claim to the Industrial Commission. On its face, the "last" payment refers to the most recent payment of medical or indemnity benefits that has actually been paid. Second, Plaintiff's argument assumes the certainty of a future indemnity payment before the right to such payment has been decided by the Industrial Commission. Third, accepting Plaintiff's interpretation of the statute would allow claimants seeking additional medical compensation to obviate the statute of limitations in any case by asserting a valid claim for

indemnity benefits alongside a claim for additional medical compensation. Such an expansive interpretation ignores the clear intent of our legislature to limit claims for additional medical compensation to a specified time period. Accordingly, because the last payment of medical compensation made by Defendant was more than two years prior to Plaintiff's current Form 33 filing, we hold that Plaintiff's right to additional medical compensation is time-barred pursuant to N.C. Gen. Stat. § 97-25.1.

**B. Disability Benefits**

The second issue raised by Plaintiff's appeal is whether the Full Commission erred in denying Plaintiff temporary total and temporary partial disability benefits under N.C. Gen. Stat. § 97-29 and § 97-30.

In its opinion and award, the Full Commission entered the following conclusion of law:

> 5. Regarding plaintiff's entitlement to temporary total or temporary partial disability benefits, the burden of proving compensable disability is with plaintiff. . . . Plaintiff was released to return to work at regular duty as of 2 July 2001. Plaintiff returned to work at regular duty for multiple employers subsequent to that date and also received unemployment benefits when he was not working. Plaintiff has failed to meet his burden of proving disability . . . and therefore plaintiff is

> not entitled to temporary partial or temporary total disability compensation. . . . Plaintiff has failed to meet his burden of proving the existence and extent of disability that was caused by the 2 March 2001 injury.

Plaintiff contends that the Full Commission's findings of fact are inadequate to support this conclusion and requests a remand for additional fact finding.

In order to recover indemnity benefits pursuant to N.C. Gen. Stat. § 97-29 (total incapacity) or N.C. Gen. Stat. § 97-30 (partial incapacity), the burden of proof is on the claimant to demonstrate "both the existence of his disability and its degree." *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683. "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2013).

> [I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683. A claimant may meet his burden of establishing the existence of a "disability" in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment;
>
> (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment;
>
> (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or
>
> (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457 (internal citations omitted).

Here, Plaintiff concedes that no medical evidence was presented before the Industrial Commission tending to show that he is "physically or mentally, as a consequence of the work related injury, incapable of work in any employment." Thus, the first prong in *Russell* is inapplicable to the present appeal. Nevertheless, Plaintiff contends that evidence was presented on the second, third, and fourth prongs in *Russell*, which would

require the Industrial Commission to make findings of fact with respect to those issues. *See Cardwell v. Jenkins Cleaners, Inc.*, 365 N.C. 1, 2, 704 S.E.2d 898, 899 (2011) ("Although the Commission need not find facts on every issue raised by the evidence, it is required to make findings on *crucial* facts upon which the right to compensation depends." (quotation marks and citations omitted)).

The Full Commission made the following findings of fact with respect to Plaintiff's employment history after the 2 March 2001 injury:

> 4. Plaintiff attempted to return to work with defendant-employer doing light-duty tasks, but was laid off on 22 April 2001.
>
> . . .
>
> 7. Defendant-employer subsequently re-hired plaintiff, at full-duty, for a short period of time.
>
> 8. Shortly after he was re-hired, plaintiff was terminated by defendant-employer. Plaintiff called out from work on two days and the next day called to say he was going to be late and was then informed he was terminated.
>
> 9. After being terminated by defendant-employer, plaintiff returned to work for other employers as a travelling construction worker in the pipe fitting trade.
>
> . . .

12.    Plaintiff testified that, because of his ongoing neck pain, he was forced to stop working as a pipe fitter in February 2003. Subsequent to that date plaintiff worked in various jobs, such as a security guard, movie theatre worker, and electrician's helper until May of 2009. The wages plaintiff earned subsequent to his employment with defendant-employer were not sufficiently established by the evidence.

.  .  .

20.    Plaintiff began a full-time business curriculum at Robeson Community College in May 2009. Plaintiff graduated with an Associate's Degree May 2012. As of the date of the hearing before the Deputy Commissioner, plaintiff was a full-time student pursuing a Bachelor's degree in Business. As of the date of the hearing before the Deputy Commissioner, plaintiff was also working part-time at the library as a computer lab assistant.

With respect to the second and third prongs of *Russell*, Plaintiff testified at the hearing before the Deputy Commissioner that he only continued working as a pipefitter between the 2 March 2001 injury and 2003 because he did not have an education and could not earn the same wages doing something outside of his expertise. Plaintiff testified that in order to keep earning money during this timeframe, he worked through pain. Plaintiff indicated that he was fired and/or left jobs because he had to miss time due to his injury. Plaintiff also testified that he experienced periods of unemployment and, at

one point, sent out between 200 and 300 resumes without finding employment. Plaintiff attributed his inability to find a job, in part, to the fact that he lacked a bachelor's degree. Record evidence also showed that on 30 January 2009, Dr. McDonald gave Plaintiff working restrictions of no lifting greater than twenty pounds and no reaching overhead.

Notwithstanding this evidence presented at the hearing, the Full Commission's findings of fact do not address Plaintiff's inability to obtain employment after a reasonable effort (prong two in *Russell*), or the futility of finding employment given Plaintiff's lack of education and injury related restrictions (prong three in *Russell*). Defendant contends that the fact that Plaintiff obtained employment during the timeframe between the 2 March 2001 injury and the 25 January 2012 Form 33 filing forecloses any possibility of recovering under the second and third prongs of *Russell*. Thus, in Defendant's view, the Full Commission was not required to address those two methods of proof in its findings of fact. However, this Court's recent opinion in *Beard v. WakeMed*, ___ N.C. ___, 753 S.E.2d 708 (2014), does not support Defendant's argument. In *Beard*, we held that "the evidence and the Commission's findings of fact regarding the evidence support the conclusion that Plaintiff has

proven disability under the second prong of *Russell*" even though the plaintiff in that case obtained a part-time position that turned into a full-time position which the plaintiff held until "a week or two before her hearing before the Industrial Commission." *Id.* at ___, 753 S.E.2d at 712 (quotation marks omitted). Thus, *Beard* stands for the proposition that a claimant may obtain employment between the injury and the hearing before the Industrial Commission without foreclosing his or her ability to prove disability under the second or third prongs in *Russell*.

Unlike a large number of workers' compensation cases, here, nearly eleven years passed between Plaintiff's injury and his claim for indemnity benefits. Given this context, it is not unusual that Plaintiff was able to find employment after his injury. While the Full Commission is free to weigh the credibility of Plaintiff's testimony and conclude that Plaintiff's burden under prongs two and three have not been met, it cannot abdicate its responsibility to address evidence presented by Plaintiff upon which the right to compensation depends. *See Britt v. Gator Wood, Inc.*, 185 N.C. App. 677, 684, 648 S.E.2d 917, 922 (2007) ("Where, as here, the findings show that plaintiff, although limited in the work he can perform, is

capable of performing some work, and there is evidence that plaintiff may have satisfied *Russell* methods two or three, the Commission must make findings addressing those two methods of proof." (quotation marks and citation omitted)).  Accordingly, because Plaintiff produced some evidence at the hearing implicating these two methods of proof, the Full Commission erred in failing to make findings of fact concerning them.  We must, therefore, remand to the Full Commission to make such findings.  *See Hilliard*, 305 N.C. at 595, 290 S.E.2d at 684 (stating that "when the findings are insufficient to determine the rights of the parties, the court may remand to the Industrial Commission for additional findings").

With respect to the fourth prong in *Russell*, namely, "the production of evidence that [the plaintiff] has obtained other employment at a wage less than that earned prior to the injury," Plaintiff contends that Finding of Fact 12 conclusively establishes that "Plaintiff could no longer perform pipe-fitting after 2003 because of his pain from his injury" and that "Plaintiff was incapable of earning the same wages in his prior employment of pipe-fitting as a result of this injury." Plaintiff's argument is misplaced.  Finding of Fact 12 states:

> 12.   Plaintiff testified that, because of his ongoing neck pain, he was forced to stop

> working as a pipe fitter in February 2003. Subsequent to that date plaintiff worked in various jobs, such as a security guard, movie theatre worker, and electrician's helper until May of 2009. The wages plaintiff earned subsequent to his employment with defendant-employer were not sufficiently established by the evidence.

Contrary to Plaintiff's assertion, the first two sentences in Finding of Fact 12 are recitations of the testimony presented at the hearing, not ultimate facts that are binding on the Full Commission. *See Jones v. Modern Chevrolet*, 194 N.C. App. 86, 93-94, 671 S.E.2d 333, 338 (2008) ("[R]ecitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." (alteration in original) (quotation marks and citations omitted)).

Furthermore, the final sentence in Finding of Fact 12, that "[t]he wages plaintiff earned subsequent to his employment with defendant-employer were not sufficiently established by the evidence," shows that the Full Commission did not find Plaintiff's evidence concerning the fourth prong in *Russell* sufficient. While Plaintiff points to his own testimony and his responses to interrogatories to show that he met his burden under prong four, the Full Commission was within its power to

discredit that evidence. *See Hassell v. Onslow Cnty. Bd. of Educ.,* 362 N.C. 299, 306–07, 661 S.E.2d 709, 715 (2008) (stating that "[t]he Commission may not wholly disregard competent evidence; however, as the sole judge of witness credibility and the weight to be given to witness testimony, the Commission may believe all or a part or none of any witness's testimony," and "[t]he Commission is not required to accept the testimony of a witness, even if the testimony is uncontradicted," nor must it "offer reasons for its credibility determinations" (quotation marks and internal citations omitted)). Accordingly, the Full Commission did not err in concluding that Plaintiff failed to demonstrate the existence of a disability under the fourth prong in *Russell.*

## C. Permanent Impairment Benefits

The final issue raised by Plaintiff's appeal is whether the Full Commission erred in finding that Plaintiff has no permanent partial impairment warranting recovery for a scheduled injury pursuant to N.C. Gen. Stat. § 97-31.

"To obtain an award of benefits under any subsection of [N.C. Gen. Stat. §] 97-31, a specific showing that the claimant has undergone a diminution in wage-earning capacity is not required. Instead, disability is presumed from the fact of

injury." *Grant v. Burlington Indus., Inc.*, 77 N.C. App. 241, 250-51, 335 S.E.2d 327, 334 (1985). "Thus, the Industrial Commission may enter an award pursuant to section 97-31 without finding that the employee is disabled." *Childress v. Fluor Daniel, Inc.*, 162 N.C. App. 524, 528, 590 S.E.2d 893, 897 (2004).

In the parties' pre-trial agreement, Plaintiff explicitly identified benefits owed under N.C. Gen. Stat. § 97-31 as one of the contested issues to be resolved before the Deputy Commissioner. Nevertheless, the opinion and award of the Deputy Commissioner did not address this issue by way of findings of fact or conclusions of law. Plaintiff assigned the Deputy Commissioner's failure to address this issue as error in his Form 44 Application for Review to the Full Commission. The Full Commission's opinion and award has no conclusions of law regarding Plaintiff's right to recovery under N.C. Gen. Stat. § 97-31. The Full Commission's opinion and award does contain the following pertinent findings of fact:

> 5. Defendant-employer eventually referred plaintiff to Dr. Dixon W. Gerber, an orthopedic surgeon. Dr. Gerber examined plaintiff on 27 June 2001. Dr. Gerber's medical record from 27 June 2001 reflects that plaintiff suffered a neck injury as a result of the 2 March 2001 work injury. In that record, Dr. Gerber reflects plaintiff's

impression that "[plaintiff] basically feels that he could probably return to work at any time." Dr. Gerber found that plaintiff was at maximum medical improvement and has no permanent partial disability. Dr. Gerber released plaintiff from treatment without restrictions as of 2 July 2001.

. . . .

22. Dr. Rhyne testified that plaintiff's probable permanent partial disability would be three percent (3%), or if plaintiff had to have surgery, the rating would be in the range of five to fifteen percent (5-15%). The Commission assigns greater weight to the testimony of Dr. Gerber regarding plaintiff's permanent partial disability rating as Dr. Gerber was plaintiff's authorized treating physician and Dr. Rhyne only performed a one time independent medical evaluation. Therefore, based on Dr. Gerber's testimony, the Commission finds plaintiff has no permanent partial disability.

(Alteration in original).

Plaintiff contends that Finding of Fact 22 is not supported by competent evidence and irreconcilably conflicts with Finding of Fact 25, which reads:

25. Based upon the preponderance of the evidence in view of the entire record, the medical treatment plaintiff received for his neck condition, on or before 18 May 2009, was reasonable and medically necessary, and was reasonably calculated to effect a cure and give relief from plaintiff's 2 March 2001 compensable injury by accident.

We agree that Finding of Fact 22 lacks evidentiary support but disagree that Finding of Fact 22 and 25 are irreconcilable.

In Finding of Fact 22, the Full Commission assigned greater weight to the testimony of Dr. Gerber based on the following facts: "Dr. Gerber was plaintiff's authorized treating physician and Dr. Rhyne only performed a one time independent medical evaluation." However, there is no record evidence that Dr. Gerber was Plaintiff's treating physician. Record evidence shows that Plaintiff presented to Dr. Gerber once, on 27 June 2001, for an evaluation. Thus, Dr. Gerber did not provide treatment to Plaintiff on an ongoing basis and has not seen Plaintiff since 27 June 2001, a few months after the 2 March 2001 injury. Furthermore, Dr. Gerber was not deposed by either party and did not provide testimony at the hearing.[2] Accordingly, we hold that the facts supporting the Full Commission's decision to assign greater weight to Dr. Gerber's opinion were not supported by competent evidence.

However, we disagree with Plaintiff's contention that Finding of Fact 22 cannot be reconciled with Finding of Fact 25. In Finding of Fact 22, the Full Commission agreed with Dr.

---

[2] The medical record generated by Dr. Gerber after Plaintiff's 27 June 2001 evaluation was received into evidence as a documentary exhibit to evince Dr. Gerber's opinion regarding Plaintiff's permanent partial impairment rating.

Gerber's assessment that on 27 June 2001, Plaintiff was at "maximum medical improvement and has no permanent partial disability." In Finding of Fact 25, the Full Commission found that all of "the medical treatment plaintiff received for his neck condition, on or before 18 May 2009, was reasonable and medically necessary, and was reasonably calculated to effect a cure and give relief from plaintiff's 2 March 2001 compensable injury by accident."

"Maximum medical improvement" refers to the point in time when the injury has stabilized and the healing period has ended. *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 12-13, 562 S.E.2d 434, 442-43 (2002), *aff'd per curiam*, 357 N.C. 44, 577 S.E.2d 620 (2003). When a claimant reaches maximum medical improvement, he or she may receive scheduled benefits pursuant to N.C. Gen. Stat. § 97-31. *Id.* at 13, 562 S.E.2d at 443. A "permanent partial disability rating" is a factual determination by a medical professional indicating the degree to which the scheduled body part has been permanently impaired for purposes of determining compensation under N.C. Gen. Stat. § 97-31. *See generally* Leonard T. Jernigan, Jr., *North Carolina Workers' Compensation: Law and Practice with Forms* § 13:2, at 143 (4th ed. 2004) (discussing how impairment ratings are often

determined in workers' compensation cases). Thus, a finding that Plaintiff is at maximum medical improvement with no permanent partial disability denotes that Plaintiff's compensable injury has healed and/or stabilized, with no permanent functional loss to his neck and/or back. The fact that Plaintiff has no *permanent* functional impairment, however, does not mean, *ipso facto*, that ongoing medical treatment will not be necessary to "effect a cure and give relief" to the underlying injury. Accordingly, we disagree that Finding of Fact 22 and 25 are irreconcilable. Nevertheless, if, on remand, the Full Commission again finds Plaintiff to have no permanent partial impairment, the Full Commission is instructed to enter additional findings reconciling that finding with Finding of Fact 25.

In summary, because the Full Commission failed to enter conclusions of law regarding Plaintiff's right, if any, to permanent partial impairment benefits under N.C. Gen. Stat. § 97-31, and because Finding of Fact 22 is insufficient as described above, we vacate Finding of Fact 22 and remand this issue for further determination by the Industrial Commission.

## IV.  Conclusion

For the foregoing reasons, we remand the question of Plaintiff's right to temporary total and temporary partial disability under the second and third prongs in *Russell* to the Full Commission for additional fact finding.  Furthermore, we vacate Finding of Fact 22 in the Full Commission's opinion and award and remand for additional findings of fact and conclusions of law on the issue of Plaintiff's entitlement to permanent partial impairment benefits under N.C. Gen. Stat. § 97-31.  In all other respects, the opinion and award of the Full Commission is affirmed.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

Judges STROUD and DILLON concur

Report per Rule 30(e).